Clifford LANTZ, Appellant,

v.

CHAMBERLAIN INDEPENDENT SCHOOL DISTRICT # 1, by and through its Board of Education, Richard Kirsch, Superintendent of Schools and Richard Lloyd, Richard Reuer, Jerome Feltman, Joellen Roxworthy, Dr. William Olsen, Terry Casey and Henry Schelle, Jr., Individually and as Members of the Board of Education of the Chamberlain Independent School District # 1, Respondents.

No. 11829-a-LJZ.

Supreme Court of South Dakota.

June 2, 1977.

Michael E. Sebastian, Miller, Miller & Sebastian, Kimball, for appellant.

Leonard E. Andera, Andera, Margadant & Erickson, Chamberlain, for respondents.

ZASTROW, Justice:

This appeal challenges the assignment of the fourth and fifth grades of the Pukwana attendance center to the Chamberlain attendance center as being (1) a violation of SDCL 13-6-9 and (2) an arbitrary, capricious, and discriminatory act by the Board of the Chamberlain Independent School District # 1. We affirm.

The Pukwana Common School District (Pukwana Common) became part of the Chamberlain Independent School District # 1 (Chamberlain Independent) as a result of the compulsory school reorganization law (Ch. 38, S.L.1967), which required that all territory or land area within South Dakota become a part of an independent school district before July 1, 1970. During the 1968–1969 school year, Pukwana Common had operated an elementary school in Pukwana consisting of grades one through eight. (The record does not reflect whether the kindergarten class was operated during 1968–1969.)

Following reorganization, Chamberlain Independent continued to operate the attendance center for grades one through eight at Pukwana. Apparently, in 1973 the school board assigned the Pukwana seventh and eighth grades to the Chamberlain attendance center. In 1974, the board assigned the Pukwana sixth grade to the Chamberlain attendance center. These assignments, though undoubtedly unpopular with the patrons of the former Pukwana Common, were apparently not challenged by appeal to the circuit court.

At the February 24, 1975 school board meeting, Superintendent Richard Kirsch presented a recommendation to the board for reassignment of students in the district. He recommended that the kindergarten, first, second, fourth and fifth grades at the Pukwana attendance center be transported to the Chamberlain and Oacoma attendance centers, and that the third grade students at Chamberlain be transported to Pukwana. That recommendation was adopted at the March 10, 1975 school board meeting over the objection of the patrons of the former Pukwana Common present at the meeting. At the March 31, 1975 school board meeting, a petition protesting that action was presented to the board by the Pukwana patrons. On April 14, 1975, the Pukwana patrons were accompanied to the school board meeting by their attorney. He advised the board that he had requested an

attorney general opinion on the legality of its action. At the April 28, 1975 meeting, he presented to the board the attorney general's opinion (AGO 75–70) that he had received. That opinion concluded that an "elementary school" as defined by SDCL 13–6–9 contemplated at least grades one through five and that the action taken by the Chamberlain Independent board on March 10, 1975, was, therefore, illegal.

Upon motion, the board rescinded its action of March 10, and a substitute motion was made and adopted. Under the new plan, only grades four and five from Pukwana would be assigned to the Chamberlain and Oacoma attendance centers.

The appellant, Clifford Lantz, appealed the action of the board to the Fourth Judicial Circuit Court. The circuit court upheld the action of the school board under the authority of *Choal v. Lyman Independent Sch. Dist. No. 12 Bd. of Ed.,* 1974, 87 S.D. 682, 214 N.W.2d 3.

The statutes which were interpreted in *Choal* and around which the controversy centers here are SDCL 13–6–9 which provides:

"The school board of a school district shall continue to operate an attendance center or elementary school operated by a former common school district during the 1968–69 school year until such time as only the resident voters of the former common district area which operated said elementary school shall vote to cease operating said school or schools. Such election shall be called by the school board of the school district by resolution or upon a petition by twenty per cent of the electors residing in such area and shall be conducted in accordance with the laws governing elections in school districts, provided, however, that the provisions of this section shall not apply to any elementary school which by its continued operation would make the district ineligible for state aid under the provisions of §§ 13–13–10 to 13–13–41, inclusive. The board shall have the authority to close such a school when the average daily membership does not exceed three and bus ser-

vice is provided within two and one-half miles of pupils' residence. When a rural school has been closed for two consecutive years by board action but no election has been held, such school shall be considered to have been closed by the electors, but may be reopened at the option of the board."

and SDCL 13–28–15 which provides:

"Every school board shall have the power and duty to make assignment and distribution of all elementary students with school residence within the district. The board shall take into consideration in assigning and distributing students its duty to provide equal educational facilities, the wishes of the patrons, and the best interests of the students in the district. Any patron who is aggrieved by a decision of the school board may appeal such decision within thirty days to the superintendent of elementary and secondary education, whose decision shall resolve the matter unless appealed to the courts."

The question involves the conflicts between the duty of the school board to assign and distribute the students and the requirement that the board continue to operate the attendance centers or elementary schools previously operated by the former common school districts.

This court in *Choal,* supra, held that the "elementary school" which must be operated need not include all eight grades, and, by inference, the "elementary school" need not have all of the grades which were provided by the former common school district.

After the *Choal* decision, the legislature enacted an amendment to SDCL 13–6–9 which added "an attendance center" to the first sentence of the statute. Chapter 126, § 2, S.L. 1974. That amendment either was an attempt to incorporate the *Choal* decision into the statute or it had no effect whatsoever on the *Choal* decision. It certainly does not appear to have been an attempt by the legislature to require the independent school districts to operate all

eight grades at the former common school district elementary schools. The legislature, if it had desired, could have amended the statute to clearly state such a requirement.* The appellant admits that *Choal* would have to be reversed or distinguished if the court is to find in his favor on this issue. He gives no suggestion of how *Choal* is distinguishable from the facts of this case, nor do we perceive any distinguishing facts. The appellant's argument is basically that which was made by Justice Winans in his dissent in *Choal.* Although that argument may be sound, there do not appear to be any compelling reasons to overrule the decision so recently established in *Choal* in the absence of any legislative action to the contrary.

■ This is not to say, however, that a school board may by reassignment deplete the student attendance to three or less, thus allowing the school to be closed under SDCL 13–6–9. Such action would be carefully scrutinized by the courts to determine that the reassignment of students has been made upon the criteria established in SDCL 13–28–15 and not as a subterfuge to avoid the election requirements of SDCL 13–6–9.

■ The second question presented by the appellant concerns the school board's proper exercise of its discretion in light of the criteria of SDCL 13–28–15. The trial de novo required by SDCL 13–46–6 permits an independent inquiry into the facts, but only for the purpose of passing on the legality of the board's decision. The circuit court must determine (1) whether the board possessed the administrative power to make the decision (which is not in issue here), and (2) whether the board acted unreasonably or arbitrarily, or whether the board manifestly abused its discretion. In determining whether there was an abuse of discretion, the circuit court, and this court, must review the testimony to determine whether the board's decision is supported by substantial evidence. In reviewing the board's

decision, the appellate court does not weigh the evidence but must determine whether there is relevant and competent evidence that a reasonable mind would accept as adequate to support a conclusion. The burden is upon the appellant to overcome the presumption that the school board's decision was made in good faith. *Collins v. Wakonda Ind. Sch. Dist. # 1,* 1977, S.D., 252 N.W.2d 646; *Mortweet v. Ethan Bd. of Ed. Davison Cty.,* 1976, S.D., 241 N.W.2d 580.

■ In making a student reassignment, the board must consider the three statutory criteria: (1) equal educational facilities, (2) the wishes of the patrons, and (3) the best interests of the students. These criteria apply to all students and patrons of the district and not just those students or patrons whose children are reassigned. None is paramount to the others, and so long as there is "substantial" evidence to support the board's decision, it will be affirmed.

■ Unfortunately, the bulk of the testimony presented at the trial de novo centered around the appellant's allegations that the board had met in secret at the Superintendent's office prior to the April 28, 1975 meeting, an issue which is not raised in this appeal. As a result, neither the appellant nor the respondents elicited a large amount of testimony about the reasons and factors considered by the board in reaching its decision. Without weighing the evidence, there appears to be substantial evidence to support the board's decision.

The evidence presented to the circuit court established that many patrons of the former Pukwana Common were opposed to the reassignment as originally proposed. Superintendent Kirsch and the board chairman Richard Lloyd testified that the board had received many opinions concerning the proposed reassignment, both pro and con. Rather than ignoring the wishes of the patrons, it appears that the board was very sensitive to those wishes when it rejected

---

* "When a statute that has been construed by the court of last resort has been reenacted substantially in the same language, the construction is presumed to have been adopted as a part of the law, *unless a contrary intent clearly appears.*" In re Gooder's Estate, 1942, 68 S.D. 415, 3 N.W.2d 478. (emphasis supplied)

the proposed plan and adopted a plan which reassigned only the older students to the Chamberlain and Oacoma attendance centers.

It appears that grades kindergarten through three at the Pukwana attendance center had been taught by one teacher, and grades four and five were taught by another teacher. Any reassignment of grade five, because of its small size and shared teacher, would have to involve grade four. It appears that the reassignment of grades four and five would allow for their integration into sections of the corresponding grades in Chamberlain, containing sixteen to eighteen students per section without adding any teaching staff, and allowing a reduction of the teaching position for the former Pukwana fourth and fifth grade classes. The reassignment of the Chamberlain third grade students to Pukwana would free rooms in the Chamberlain attendance center for music and a resource center. Because the Pukwana facility contained unused rooms, it would provide the Chamberlain students the additional facilities which were unavailable because of the crowded conditions.

It also appears that the fifth grade students would have the opportunity to participate in band and organized physical education classes and a broader curriculum at Chamberlain, not available at Pukwana. We must admit that we sympathize with those parents whose children must spend long hours riding buses to and from distant schools, and it appears that this was one of the reasons why the board reconsidered the reassignment of grades kindergarten through three and kept those young students at the Pukwana attendance center. In this instance, though, the problem is borne by the third grade students of Chamberlain, as well as the students from Pukwana.

The decision of the board and the judgment of the circuit court are affirmed.

All the Justices concur.

WINANS, Retired Justice, sitting for MORGAN, Justice, disqualified.