Ray REVIER and Marilyn Revier, Appellants,

v.

SCHOOL BOARD OF THE SIOUX FALLS SCHOOL DISTRICT # 49–5, Appellee.

No. 13182.

Supreme Court of South Dakota.

Argued Nov. 21, 1980.

Decided Dec. 23, 1980.

Rehearing Granted Jan. 16, 1981.

Charles L. Dorothy, of Dorothy, Craig, Palmer & Harris, Sioux Falls, for appellants.

Robert E. Hayes, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for appellee.

MORGAN, Justice.

Appellants sought a writ of prohibition against the action of the Sioux Falls School Board (school board) in closing Beadle School, closing South Sioux School as an elementary attendance center, and moving special education classes from Beadle School to South Sioux School. The trial court denied the writ and this appeal followed. We reverse.

On April 14, 1980, the school board passed the following resolution:

On the recommendation of the Administration, a motion was duly made by Mrs. Larson and seconded by Mr. Brandt, five (5) votes "yes" on roll call, authorizing the closing of South Sioux Elementary School building as an elementary school attendance center, effective with the 1980–81 school year, and approving the moving of the Special Education programs currently operating and housed at Beadle School building to South Sioux School building, effective with the beginning of the 1980–81 school year . . . .

It is undisputed that this action was taken under the provisions of SDCL 13–23–1.[1] Appellants contend that the adoption of the resolution was untimely in contravention of the provisions of SDCL 13–23–3, because the resolution was not adopted in time to permit the filing of petitions and the holding of a special election before March 1, 1980. The school board argues, and the trial court held, that SDCL 13–23–3 is not applicable to SDCL 13–23–1, but only to SDCL 13–23–2. We disagree.

In essence, SDCL 13–23–1 provides that the school board shall have the power to establish and discontinue attendance centers by resolution.[2] SDCL 13–23–2 provides that the electors shall have the power to direct the school board to establish or discontinue an attendance center by holding a special election pursuant to SDCL 13–23–3. SDCL 13–23–3 then provides that the school board may submit the question of discontinuing an attendance center for the next fiscal year to a vote of the people upon resolution of the board, and *shall* submit

---

1. SDCL 13–23–1 provides:

    The school board shall have the power to establish and discontinue attendance centers by resolution of the board except as provided in § 13–6–9.

    SDCL 13–23–2 provides:

    The electors of the school district shall have the power to direct the school board to either establish or discontinue an attendance center by holding a special election as provided in § 13–23–3, but the electors are limited in their power as the school board is limited by law in providing educational opportunities.

    SDCL 13–23–3 provides:

    The school board may submit the question of discontinuing an attendance center, except as provided in § 13–6–9, for the next school fiscal year to a vote of the people upon resolution of the board, and shall submit such question to a vote of the people upon the filing of a petition with the business manager of the school district calling for such vote and signed by at least twenty-five per cent of the electors of the district. The passing of the resolution, the filing of the petition, and the holding of the special election shall be accomplished before the first of March.

    If a majority of the electors voting shall cast their votes in favor of the question, the school board shall be bound by such decision for the next school fiscal year.

2. The references to SDCL 13–6–9, dealing with school reorganization, are not material to this discussion.

such question upon the requisite filing. Said section further provides that the passing of the resolution, the filing of the petitions, and the holding of the special election shall be accomplished before March 1.

The history of the statutes shows that they originally related to high schools; however, in 1975 S.D.Sess.Laws ch. 128, the term "attendance centers" was adopted for the first time and applied to all three statutes.

As we have recently held in construing a statute, it "must be construed according to its manifest intent; such intent must be derived from the statute as a whole, as well as other enactments relating to the same subject." *Herrmann v. Bd. of Com'rs of City of Aberdeen*, 285 N.W.2d 855, 857 (S.D. 1979).

"[I]n construing two or more statutes in reference to each other they should be so construed that effect may be given to all of the provisions of each, if that can be done by any fair and reasonable construction. Where there is no conflict, ambiguity, or inconsistency, there is no room for construction." *Hirning v. Toohey*, 50 S.D. 457, 460, 210 N.W. 723, 724 (1926).

It is this court's duty to construe statutes so as to make them harmonious and workable with each other. *Black v. Circuit Court of Eighth Judicial Circuit*, 78 S.D. 302, 101 N.W.2d 520 (1960).

With these rules in mind, we then look to the school board's argument that SDCL 13–23–3 applies only to SDCL 13–23–2. If this were true, then the language of SDCL 13–23–3, "and shall submit such question to a vote of the people upon the [requisite] filing," is surplusage, because SDCL 13–23–2 already requires such an election for both establishment and discontinuance of an attendance center. We do not believe that the legislature intends to insert surplusage in its enactments. Furthermore, the language of the first clause, "The school board may submit the question of discontinuing an attendance center ... for the next school fiscal year to a vote of the people upon resolution of the board," obviously refers to SDCL 13–23–1. It is followed by "and shall submit such question" wherein "and" is conjunctive, and "such question" obviously means the question of discontinuing an attendance center.

Looking then to appellants' argument of reading SDCL 13–23–1 and SDCL 13–23–3 together, it is perfectly reasonable to conclude that the legislature intended that while the school board should have the power to discontinue attendance centers by resolution, the school board might desire to submit such question to a vote of the people for whatever reason it might have, and that it is required to do so upon the filing of the requisite petitions by the electors of the school district. The statutes, when read in conjunction, provide a very limited extension of the right of initiative and referendum to the actions of the school board. That right is severely limited to the question of opening or discontinuing attendance centers, and the procedure for filing petitions and holding a special election is specially provided for, as opposed to such provisions in the general statutes on initiative and referendum in SDCL ch. 2–1.

We therefore hold that the trial court erred in its judgment "[t]hat the [school board] acted timely in passing its resolution to discontinue the general elementary programs at South Sioux Elementary School, and to relocate the special education programs at said facility, and [school board] in no way exceeded its statutory authority in so doing." We hold that the action of the board was untimely and therefore illegal, and remand to the trial court with instructions to forthwith enter the writ of prohibition.[3]

WOLLMAN, C. J., and DUNN and FOSHEIM, JJ., concur.

HENDERSON, J., dissents.

---

3. We are aware, through an article in the Sioux Falls Argus Leader, that the school board apparently stayed its own action until after the matter was orally argued before this court and has only recently decided to implement its resolution as of January 5, 1981. The issue of prohibition therefore is not moot and the writ is proper.

HENDERSON, Justice (dissenting).

I respectfully dissent and would affirm the trial court's ruling which denied the writ of prohibition.

Simply stated, this appeal is fostered from a dispute involving statutory construction.

There are four legal avenues by which an attendance center can be discontinued in the State of South Dakota:

(1) By resolution of the school board pursuant to SDCL 13–23–1;

(2) By direction of the electorate pursuant to SDCL 13–23–2;

(3) By the school board's discretionary act in referring the question to the electorate; and

(4) By the affirmative act of the electorate in referring the resolution after its passage by the school board.

As I interpret these statutes, it is only with respect to the third and fourth avenues that a deadline exists. The statutes appear to be clear in their meaning that meeting the deadline is the obligation of the party seeking the referendum.

Further, I interpret these statutes to mean that the legislature intended that a school board need not refer its decision to discontinue an attendance center to the electorate, but if it chooses to do so, its resolution must be passed prior to March 1 of the calendar year in which it is to take effect.

The Sioux Falls School Board acted solely by resolution under SDCL 13–23–1. No time limitation applies to this statute. The South Dakota Legislature saw fit to grant unto the school districts of this state the broad discretionary authority stated in SDCL 13–23–1. SDCL 13–23–1 is consistent with SDCL 13–8–39, the latter providing the school board with general charge and control of the operation of the school district. I do not believe that the courts should engraft a time limitation obligation upon the Sioux Falls School Board when such a time limitation is not provided for in SDCL 13–23–1.

I do not question that the matter of referendum, as it pertains to the closing of attendance centers, is subject to legislatively imposed deadlines; however, cardinal is the initial grant of authority to the school board which is not subject to a chronometric deadline.

In *Knodel Common Sch. Dist. No. 58 v. County Bd. of Ed.*, 82 S.D. 185, 191, 144 N.W.2d 38, 42 (1966) (emphasis supplied), this Court stated:

It is a familiar rule where there is in the same statute a particular enactment and also a general one, which in its most comprehensive sense would include what is embraced in the former, the particular enactment must be operative, and *the general enactment must be taken to affect only such cases as are not within the provisions of a particular enactment.*

This rule should be applied to the case at Bar. The deadline provision of SDCL 13–23–3 is the particular enactment which, by its terms, applies only to that situation in which the board precipitates a referendum vote of the electorate.