Robert D. NELSON, Sandra J. Nelson, Dan Enderby, Colleen Enderby, Debra Garrett, Phil Lervaag, Kenneth Gardner, Kathy Gardner, Roger Goshman, Nancy Goshman, Appellants,

v.

The SCHOOL BOARD OF the HILL CITY SCHOOL DISTRICT NO. 51–2 OF PENNINGTON COUNTY, Appellees.

Nos. 16759, 16768.

Supreme Court of South Dakota.

Considered on Briefs April 26, 1990.

Decided July 25, 1990.

Charles J. Mickel, Rapid City, for appellants.

Daniel E. Ashmore, Rapid City, for appellees.

PER CURIAM.

Robert Nelson et al. (Nelson) appeal a trial court judgment affirming the decision of the school board of the Hill City School District (the board) to close the Keystone Attendance Center in Keystone, South Dakota. We affirm.

FACTS

Prior to a reorganization of school districts, the Keystone Attendance Center provided educational services in Keystone in grades kindergarten through eight. The Center was located within the boundaries of an incorporated municipality and was operated as a former common school district during the 1968–69 school year. Children from the Keystone School District and

the former Tin Mill School District attended the Keystone Center.[1]

In 1970, as a result of school district reorganization legislation, the Keystone School District was merged into the Hill City School District. In 1973, the patrons of the Keystone Center voted to close its seventh and eighth grades. In 1974, the board adopted an, "open assignment policy," which gave parents in the former Keystone and Tin Mill School Districts the option of sending their children to either the Keystone Center or the Hill City School. This policy essentially remained in effect until January 1989 when the Keystone Center was closed.

In the years following adoption of the open assignment policy, the number of students attending the Keystone Center decreased from fifty-three the year before the policy took effect to eight the year the school was closed. During this time, six separate elections were held in the old Keystone School District on the issue of closing the Center. Each time, the patrons indicated a preference for keeping the Center open.

In November 1988, the board was advised by its attorney that SDCL 13-6-91 would permit it to close the Keystone Center without an election because its membership was less than twenty-five students. Thus, on November 9, 1988, the board voted to close the Center effective January 20, 1989.

Nelson appealed the board's decision to the trial court, contesting the board's failure to hold an election before closing the Keystone Center. Alternatively, he contended that the board utilized the open assignment policy as a subterfuge to reduce the number of students at the Center to a level permitting its closure without an election. Nelson argued that this bad faith utilization of the assignment policy required a reversal of the board's decision to close the Center.

A trial de novo was conducted before the trial court on April 14, 1989. After trial, the trial court entered findings of fact,

conclusions of law and a judgment affirming the board's decision to close the Keystone Center. This appeal followed.

## ISSUE ONE

WHETHER SDCL 13-6-91 PERMITS A SCHOOL BOARD TO CLOSE AN ATTENDANCE CENTER IN AN INCORPORATED MUNICIPALITY WITHOUT AN ELECTION WHEN ITS MEMBERSHIP IS LESS THAN TWENTY-FIVE STUDENTS?

■ SDCL 13-6-91 provides:

> If a school district is reorganized under chapter 13-6, any attendance center providing educational service in grades kindergarten through eight located within the boundaries of an incorporated municipality and operating prior to reorganization may not be closed nor reduced below grade six if membership is twenty-five or more students in those grades until the voters of the dissolved district may by majority vote taken at a regular or special election as provided in § 13-23-3, agree to the closure or reduction.

The trial court read this statute in conjunction with several other provisions on closing schools and held that it unambiguously authorized the board to close the Keystone Center without an election because its membership was less than twenty-five students. Nelson points out that the statute only requires a board to conduct an election if membership is twenty-five or more students and is silent on a board's authority to close a center without an election when its membership is less than twenty-five. He asserts that when membership is less than twenty-five, the question of whether an election is required prior to closure of a center is controlled by SDCL 13-6-9:

> The school board of a school district shall continue to operate an attendance center or elementary school operated by a former common school district during the 1968-69 school year until such time as only the resident voters of the former common district area which operated the

1. Many of these facts are relevant because of certain statutory language discussed below.

elementary school shall vote to cease operating the school or schools. The election shall be called by the school board of the school district by resolution or upon a petition by twenty percent of the voters residing in the area and shall be conducted in accordance with the laws governing elections in school districts. The provisions of this section shall not apply to any elementary school which by its continued operation would make the district ineligible for state aid under the provisions of §§ 13-13-10 to 13-13-41, inclusive. *The board may close such a school when the average daily membership does not exceed five* and bus service is provided within two and one-half miles of pupils' residence. When a rural school has been closed for two consecutive years by board action but no election has been held, the school shall be considered to have been closed by the voters, but may be reopened at the option of the board. (emphasis added).

SDCL 13-6-9 (rev. 1982).[2] Relying on this statute, Nelson argues that the board was required to hold an election before closing the Keystone Center because its average daily membership exceeded five students.

In resolving Nelson's contentions, we note that the facts pertinent to his first issue are not disputed. Neither party contests the fact that the Keystone Attendance Center fell within the category of schools described by both SDCL 13-6-9 (rev. 1982) and SDCL 13-6-91. Thus, resolution of Nelson's argument is solely a question of which of the two statutes is applicable, a matter of statutory construction.

"[C]onstruction of a statute is a question of law and thus the decision below is fully reviewable without deference to the decision of the trial court." *Reid v. Huron Bd. of Educ.*, 449 N.W.2d 240, 242 (S.D. 1989). "The first and most important rule of statutory construction is to determine and give effect to the intention of the legislature." *Watertown Independent School Dist. No. 1 v. Thyen*, 83 S.D. 309, 314, 159

N.W.2d 122, 125 (1968). Although legislative intent is to be derived primarily from the language expressed in the statute (*Reid, supra*), it is also derived from other enactments relating to the same subject which may modify or limit the effective scope of the statute in issue. *Border States Paving v. Dept. of Revenue*, 437 N.W.2d 872 (S.D.1989). Moreover, when the question is which of two enactments the legislature intended to apply to a particular situation, "terms of a statute relating to a particular subject will prevail over general terms of another statute." *Meyerink v. Northwestern Public Service Co.*, 391 N.W.2d 180, 184 (S.D.1986).

Applying these standards, we initially observe that SDCL 13-23-1 gives school boards the general authority to discontinue attendance centers by resolution. *Revier v. School Bd. of Sioux Falls, etc.*, 300 N.W.2d 55 (S.D.1981). The statute provides in pertinent part that, "[t]he school board shall have the power to establish and discontinue attendance centers by resolution of the board *except as provided in § 13-6-9.*" SDCL 13-23-1 (emphasis added). SDCL 13-6-9 (rev. 1982) requires a board to continue to operate an attendance center operated by a former common school district during the 1968-69 school year until it is closed by election unless, among other factors, its membership is five or fewer students. *Kaberna v. School Bd. of Lead-Deadwood*, 438 N.W.2d 542 (S.D. 1989).

As noted, there is no dispute over the fact that the Keystone Center fell within the category of attendance centers described in SDCL 13-6-9 (rev. 1982). Absent SDCL 13-6-91, it would be clear that the board was required to hold an election before closing the Center. However, SDCL 13-6-91 specifically addresses attendance centers such as the Keystone Center which are located within the boundaries of incorporated municipalities. The statute explicitly requires an election prior to closing these centers if their membership is twenty-five or more students. The

2. We note that SDCL 13-6-9 has been amended twice since the trial court's decision on this

matter. *See* 1989 S.D. Sess.L. ch. 30, § 36; 1990 S.D.Sess.L. ch. 118, § 3.

clear intention of the statute is to permit school boards to close these centers by resolution and without an election pursuant to their general authority under SDCL 13–23–1, whenever a center's membership is less than twenty-five students.

 Nelson's interpretation of SDCL 13–6–91 would render the statute meaningless. Even without the statute, if an attendance center had twenty-five students an election would be required prior to its closure under SDCL 13–6–9 (rev. 1982). It must be presumed that the legislature was aware of the election requirements of SDCL 13–6–9 (rev. 1982) when it enacted SDCL 13–6–91 in 1983. *Meyerink, supra.* Further, in construing a statute, it must also be presumed that the legislature intended to enact a valid and effective statute and there is a presumption against a construction which would render a statute ineffective or meaningless. *City of Sioux Falls v. State Board of Equalization,* 87 S.D. 106, 203 N.W.2d 419 (1973). *See also, Revier, supra* (presumed that legislature does not intend to insert surplusage in its enactments). "The law must be so construed as to give effect to all of its provisions, if possible." *Beitelspacher v. Winther,* 447 N.W.2d 347, 351 (S.D.1989). Inasmuch as the board's interpretation of SDCL 13–6–91 gives the statute effect, while Nelson's does not, the board's interpretation must prevail.

The board's interpretation of SDCL 13–6–91 also finds support in SDCL 13–23–3. SDCL 13–23–3 further qualifies a board's authority to close an attendance center by resolution. *See, Revier, supra.* The statute provides in pertinent part that, "[t]he school board *may submit* the question of discontinuing an attendance center, *except as provided in §§ 13–6–9 and 13–6–91,* for the next school fiscal year to a vote of the people upon resolution of the board...." SDCL 13–23–3 (emphasis added). As we have discussed, SDCL 13–6–91 only requires an election prior to closure of an attendance center in an incorporated municipality when the center's membership is twenty-five or more students. Thus, when its membership is less than twenty-five,

SDCL 13–23–3 gives the board the discretion to submit the closure issue to a vote unless the other mandatory election requirements of the statute (not at issue here) are met. Here, the board chose to close the Keystone Center by resolution without holding an election. Based upon the foregoing reasoning, we hold that its actions were fully authorized by SDCL 13–23–1, SDCL 13–23–3 and SDCL 13–6–91.

### ISSUE TWO

WHETHER THE TRIAL COURT ERRED IN HOLDING THAT THE BOARD'S OPEN ASSIGNMENT POLICY WAS NOT USED TO DECREASE THE NUMBER OF STUDENTS AT THE KEYSTONE ATTENDANCE CENTER TO A LEVEL PERMITTING ITS CLOSURE WITHOUT AN ELECTION?

In *Lantz v. Chamberlain Independent Sch. Dist. # 1,* 254 N.W.2d 155 (S.D.1977), this court reviewed a school district's reassignment of students that had the effect of reducing an elementary school from eight grades to three. Although we upheld the reassignment, we cautioned:

This is not to say, however, that a school board may by reassignment deplete the student attendance to [five] or less, thus allowing the school to be closed under SDCL 13–6–9. Such action would be carefully scrutinized by the courts to determine that the reassignment of students has been made upon the criteria established in SDCL 13–28–15 and not as a subterfuge to avoid the election requirements of SDCL 13–6–9.

*Lantz,* 254 N.W.2d at 158. Nelson contends that the precise act foreseen in this passage from *Lantz* occurred in the present case. He asserts that the board purposefully utilized the open assignment policy in the old Keystone and Tin Mill School Districts as a means of reducing the membership of the Keystone Center to less than twenty-five students, thereby permitting its closure without an election under SDCL 13–6–91. Citing *Lantz,* Nelson argues that this subterfuge should invalidate the board's action in closing the Keystone Center.

■ As an initial response, the board asserts that because Nelson failed to take a timely appeal from its last action on the open assignment policy, this court has no jurisdiction to consider this issue. We disagree. Although it is true that Nelson failed to take a timely, direct appeal on the issue of the open assignment policy itself, he did take a timely appeal from the board's action in closing the Keystone Center. The portion of *Lantz* quoted above clearly indicates that the role of an assignment policy in closing a school without an election is a relevant inquiry in a review of the decision to close the school. Thus, we find sufficient jurisdiction to consider this issue.

*Lantz* also sets forth the appropriate standard of review for determination of the issue of whether an assignment policy has been adopted or utilized in bad faith:

> The circuit court must determine ... whether the board acted unreasonably or arbitrarily, or whether the board manifestly abused its discretion. In determining whether there was an abuse of discretion, the circuit court, and this court, must review the testimony to determine whether the board's decision is supported by substantial evidence. In reviewing the board's decision, the appellate court does not weigh the evidence but must determine whether there is relevant and competent evidence that a reasonable mind would accept as adequate to support a conclusion. The burden is upon the appellant to overcome the presumption that the school board's decision was made in good faith. (citations omitted).

*Lantz*, 254 N.W.2d at 158.

■ Although the minutes of the board offered into evidence are vague concerning its consideration of the criteria for assignment of students outlined in SDCL 13–28–15,[3] we find substantial evidence in the testimony offered below to support the board's adoption and maintenance of the open assignment policy.

Testimony was taken from a former board member who served when the open assignment policy was originally implemented in 1974, a second board member who has served since 1978 (currently board president) and from the superintendent of the school district who began his employment in 1980. Their collective testimony indicates that the open assignment policy was instituted primarily at the wishes of parents who wanted their children to attend a larger school with more activities and programs in which to participate. Over the years numerous public meetings were conducted by the board on the open assignment policy and numerous parents and patrons came forth to discuss the issue. The reason parents generally favored open assignment was the availability of certain educational programs in Hill City and because they wanted their children to attend a school with more students where they would be able to intermingle and have more competition. Other considerations by the board in maintaining the policy were the miles and time involved in transporting the children to Hill City and the financial impact of a closed assignment policy which would require an additional staff person and an upgrade of the facility in Keystone. Parental choice was of major importance in maintaining the open assignment policy and the board's witnesses denied that the board ever used that policy to reduce the number of students in the Keystone Center to a level permitting its closure without an election.

Although the board's minutes fail to reflect a line-by-line consideration of the criteria involved in setting an assignment policy under SDCL 13–28–15, the testimony did establish the board's consideration of the appropriate factors. Other facts also militate against a finding of bad faith on the part of the board in using the open assignment policy to close the Keystone Center. First, students in the former Tin Mill

---

3. SDCL 13–28–15 provides in pertinent part:
 The board shall take into consideration in assigning and distributing students its duty to provide an education within the guidelines of the state board of education's accreditation rules, the wishes of the parents or guardians of the child being assigned and the district patrons, the miles and time involved in transporting the child to school, and the educational and financial impact on the district.

School District were given the option of going to Keystone or Hill City. If the board had wanted to reduce numbers at the Keystone Center, it could have required all of the students in the Tin Mill District to attend the Hill City School. Second, numerous improvements were made to the Keystone Center over the years and, in fact, the board at one time gave serious consideration to building a new school in Keystone. These would be unusual actions for a board plotting the closure of a school. Third, the board adopted the open assignment policy in 1974, and was not even aware until the fall of 1988 that SDCL 13-6-91 would permit closing the Keystone Center without an election because of the number of students. This lack of knowledge would have made it difficult for the board to carry out a long-range plan to reduce numbers at the Keystone Center to a level permitting its closure without an election.

Against the foregoing facts, Nelson could offer only his own speculation and conjecture that the board utilized the open assignment policy as a means of closing the Keystone Center. We find this insufficient to establish bad faith on the part of the board and further find no abuse of discretion by the board in implementing and maintaining the open assignment policy.

## NOTICE OF REVIEW

By notice of review, the board argues that the trial court erred in excluding evidence consisting of the deposition testimony of the draftsmen of SDCL 13-6-91 concerning the legislative intent and history behind the statute. Having already upheld the board's authority to close the Keystone Center without an election under the pertinent statutes, we find it unnecessary to address the board's notice of review issue.

Affirmed.

HENDERSON, J., deeming himself disqualified, did not participate in this decision.