STATE of South Dakota, Plaintiff
and Appellee,

v.

Richard SHULT, Defendant
and Appellant.

No. 14887.

Supreme Court of South Dakota.

Considered on Briefs Oct. 25, 1985.

Decided Jan. 8, 1986.

Grant E. Gormley, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Paul Riley, Aberdeen, for defendant and appellant.

WUEST, Acting Justice.

This is an appeal from a judgment of conviction for second-degree burglary, pursuant to SDCL 22–32–3. We affirm.

On July 7, 1984, Richard Shult (appellant) and his girl friend, Brenda Lewis (Brenda), entered the Super America store in Redfield, South Dakota. While Brenda remained at the front of the store, appellant went to the back where the frozen food is located. Jay Dring (Dring), the store employee on duty at the time, testified that he went to the back of the store to lock the security door. As he walked past an aisle, Dring noticed appellant standing by a freezer wrapping something in a pair of sweatpants he was carrying. After locking the door, Dring approached appellant and asked to see what was in the sweatpants. Initially, appellant said that it was an ice-pack he was applying to an injury, but then he unfolded the garment revealing a frozen pizza, stating, "I was just getting food for me and her to eat." There was no discussion of payment for the pizza at this time,

and Dring told appellant to remain in the store while he called the police.

Redfield Police Officers Greg Hagan (Hagan) and Leslie Helm (Helm) arrived at the store. Hagan entered while Helm remained in the patrol car. Officer Hagan testified that appellant met him at the store's entrance, stating, "I'm the one you're looking for." After discussing the incident with Dring, Hagan took appellant to the patrol car where he met Officer Helm, who testified that appellant again stated, "I'm the one you're looking for," and that he had taken the pizza. Appellant was then taken to the police station where he was arrested for shoplifting and read the *Miranda* warnings by Officer Hagan. He was interviewed by Helm, and stated that he had wrapped the pizza in the sweatpants, and had intended to take the pizza before he entered the store. His statement was then transcribed. He read the statement, made an addition thereto, and signed the statement.

Appellant was subsequently charged by the Spink County State's Attorney with second-degree burglary, pursuant to SDCL 22–32–3, which states:

Any person who enters or remains in an occupied structure with intent to commit any crime therein under circumstances not amounting to first degree burglary, is guilty of second degree burglary. Second degree burglary is a Class 3 felony.

He was tried before a jury and convicted of the offense as charged. The trial court sentenced appellant to one year in the South Dakota State Penitentiary, and he appeals.

Prior to trial, the circuit court held that the written statement transcribed on July 7, 1984, which summarized the question and answer session between Officer Helm and appellant, was read and signed by appellant "voluntarily and without any threats, promises or inducements whatsoever." Accordingly, the trial court ruled that the written statement was admissible at trial. Appellant's first contention on appeal is that the trial court erred in this

determination and that the statement was not knowingly and voluntarily made, because appellant was in pain from recent surgery and "under the influence of numerous prescription drugs at the time of the interview."

This court has held repeatedly, that when examining the issue of the voluntariness of a confession or admission, the trial court's finding of voluntariness will not be overturned unless it is clearly erroneous. *State v. Hintz*, 318 N.W.2d 915 (S.D.1982); *State v. Lyons*, 269 N.W.2d 124 (S.D.1978); *State v. Lewis*, 90 S.D. 615, 244 N.W.2d 307 (1976); *State v. Aschmeller*, 87 S.D. 367, 209 N.W.2d 369 (1973). "Moreover, we consider the evidence in a light most favorable to support the trial court's denial of appellant's suppression motion." *Hintz*, 318 N.W.2d at 916. *See also State v. Bult*, 351 N.W.2d 731 (S.D.1984); *State v. Kiehn*, 86 S.D. 549, 199 N.W.2d 594 (1972).

> Whether appellant waived his constitutional rights must be answered using the totality of the circumstances approach. That is, considering appellant's age, experience, education, background, and intelligence, did he understand the *Miranda* warnings and the nature of his constitutional rights and did he knowingly and intelligently forego his right to remain silent and to have the assistance of counsel?

*Bult*, 351 N.W.2d at 735 (emphasis in original) (citations omitted). *See also State v. West*, 344 N.W.2d 502 (S.D.1984); *State v. Caffrey*, 332 N.W.2d 269 (S.D.1983).

■ The evidence supporting the trial court's conclusion as to voluntariness and waiver is as follows: Appellant is twenty-three years of age and has a prior felony conviction. At the suppression hearing, the officers involved stated that he had given them similar statements on five or six occasions. When the officers arrived at the scene, appellant approached them and stated "I'm the one you're looking for." He was read the *Miranda* warnings prior to questioning and stated that he understood and waived them. Appellant read the written statement, and before signing it, he was allowed to make an addition. The officers testified that he did not act unusual or tell them that he was in pain when questioned. Moreover, he was given no promises in return for his statement, nor was he coerced, threatened or intimidated into making the statement. Against this evidence is appellant's claim that he was in pain and under the influence of drugs.

We conclude that the trial court's admission of the written statement was not clearly erroneous, and the evidence produced at the suppression hearing was sufficient to support the trial court's ruling therein. As to this, we must defer to the trial judge's ability to observe the witnesses during their testimony and to determine their credibility.

■ Prior to trial, the state's attorney requested that the trial court rule on whether the prosecution would be allowed to use appellant's prior felony bad check conviction to impeach his testimony in the event appellant took the stand. After argument, the trial court weighed the probative value of the evidence against its prejudicial effect, in accordance with SDCL 19–14–12, and admitted the prior conviction, stating:

> The court does find that the previous conviction is fairly recent. The conviction was less than three years from the date of the offense, that it was for a felony. The felony involved dishonesty. That it would therefore be considered in the defendant's truthfulness when he testifies. That intent will be one of the issues in the case and therefore, the Court would determine that the probative value of admitting the evidence would outweigh the prejudicial effect to the defendant, realizing that most any evidence may be considered prejudicial and, of course, that's admissible only if the defendant testifies.

Appellant testified at trial, and as allowed by the trial court's ruling, his prior felony bad check conviction was used to impeach his credibility as a witness. He argues on

appeal that the trial court's ruling therein constituted reversible error.

SDCL 19–14–12 provides:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted but only if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party or the accused and the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement, regardless of the punishment.

Rulings made under SDCL 19–14–12 are discretionary and the standard of review on appeal is that an abuse of discretion is required for reversible error. *State v. King*, 346 N.W.2d 750 (S.D.1984); *State v. Dickson*, 329 N.W.2d 630 (S.D.1983); *State v. Cochrun*, 328 N.W.2d 271 (S.D.1983); *State v. Sahlie*, 90 S.D. 682, 245 N.W.2d 476 (1976).

"This Court has cautioned trial courts 'to make a definite finding that the evidence is more probative than prejudicial before allowing prior convictions into evidence.'" *King*, 346 N.W.2d at 751 (*citing Cochrun, supra; State v. Quinn*, 286 N.W.2d 320 (S.D.1979)). The excerpt cited herein from the trial court's ruling on the instant issue shows that, as per our holding in *State v. Ford*, 328 N.W.2d 263 (S.D.1982), the trial court balanced the probative value of the prior conviction against its prejudicial effect, and made a finding that the probative value of admitting the evidence outweighed the prejudice. Furthermore, the trial court gave the jury the following cautionary instruction:

> A defendant's prior conviction of a crime is admitted into evidence solely for your consideration in evaluating the credibility of the defendant as a witness. It is not evidence of the defendant's guilt of the offense with which he is charged. You must not draw any inference of guilt against the defendant from such prior conviction. You may consider it only in connection with your evaluation of the

credence to be given his present testimony in court.

Because the record shows that the trial court applied the balancing test and made a finding that the probative value outweighed the prejudice, and a cautionary instruction was given, we affirm the trial court's admission of appellant's prior felony bad check conviction.

In closing argument, the state's attorney made reference to appellant's contention that he was under the influence of prescription drugs during and after the offense. The prosecution stated: "The only evidence is [appellant's] statement that he had some red pills. He brought no evidence forward to support his claim and his lawyer's claim that those red pills caused the problems. If that's his defense, where's his evidence?" Following the State's closing argument, appellant moved for a mistrial, based upon these remarks. The trial court denied the motion and appellant argues that the denial constituted reversible error.

We addressed the issue of prosecutorial misconduct in *State v. Kidd*, 286 N.W.2d 120, 121–22 (S.D.1979), stating:

> [N]o hard and fast rules exist which state with certainty when prosecutorial misconduct reaches a level of prejudicial error which demands reversal of the conviction and a new trial; each case must be decided on its own facts. *State v. Webb*, [251 N.W.2d 687 (S.D.1977)]. Furthermore, we will not disturb the trial court's ruling on a motion for a new trial based on misconduct of counsel unless we are convinced there has been a clear abuse of discretion. *State v. Havens*, 264 N.W.2d 918 (S.D.1978); *State v. Burtts*, 81 S.D. 150, 132 N.W.2d 209 (1964); *State v. Norman*, 72 S.D. 168, 31 N.W.2d 258 (1948).

■ Counsel is allowed considerable latitude in argument and has the right to comment on matters supported by the evidence. *State v. Standing Soldier*, 299 N.W.2d 568 (S.D.1980). This was not a statement asking why appellant had not testified as appellant had testified. A com-

ment on failure to call witnesses is permissible under South Dakota law. *State v. Rosales*, 302 N.W.2d 804 (S.D.1981); *State v. Winckler*, 260 N.W.2d 356 (S.D.1977). Moreover, the trial court instructed the jury that the burden was on the state to prove appellant's guilt beyond a reasonable doubt.

Appellant's next contention is that the trial court's denial of his motion for acquittal at the close of the state's case was error requiring a reversal of his conviction. Specifically, appellant argues that he did not have the requisite intent because he was suffering from the effects of drugs and pain.

> A motion for judgment of acquittal is made pursuant to SDCL 23A–23–1. The trial court must consider the evidence in the light most favorable to the nonmoving party when ruling on a motion for judgment of acquittal and must give the nonmoving party the benefit of all reasonable inferences in its favor. *State v. Decker*, 317 N.W.2d 138 (S.D.1982); *State v. Gallegos*, 316 N.W.2d 634 (S.D. 1982); *State v. Vogel*, 315 N.W.2d 321 (S.D.1982). A motion for judgment of acquittal is properly denied if the state has introduced evidence from which, if believed, the jury may reasonably find the defendant guilty of the crime charged. *State v. Blakey*, 332 N.W.2d 729 (S.D.1983); *State v. Decker, supra; State v. Miller*, 313 N.W.2d 460 (S.D. 1981); *State v. Myott*, 246 N.W.2d 786 (S.D.1976); *State v. Peck*, 82 S.D. 561, 150 N.W.2d 725 (1967). The state may prove all elements of the crime with circumstantial evidence. *State v. Wilson*, 297 N.W.2d 477 (S.D.1980).

*Bult*, 351 N.W.2d at 734 (emphasis in original).

■ To reiterate, appellant told the officers involved that he was the one they were looking for when they entered the Super America store. Appellant read and signed a written statement summarizing oral admissions he made to the officers to the effect that he intended to steal the pizza before he entered the store. Further, appellant made no statements to the officers concerning any illness or drugs he was taking at the time of his arrest. It is our opinion that if believed, the jury could reasonably find upon these facts that appellant was guilty of the crime charged.

■ Article III, Section 21 of the South Dakota Constitution provides: "No law shall embrace more than one subject, which shall be expressed in its title." Appellant's fifth argument on appeal is that SDCL 22–32–3, our second-degree burglary statute, is unconstitutional as adopted, because the title to Chapter 158 of the South Dakota Session Laws of 1976, by which it was enacted, does not satisfy the requirements of Article III, Section 21. SDCL 22–32–3, however, has been reenacted into the South Dakota Code, and as we stated in State v. Matteson, 87 S.D. 216, 219, 205 N.W.2d 512, 514 (1973): "After a statute has been reenacted as part of the Code, 'it is no longer subject to assault because of a claimed defect in the title to the original Act when it was enacted by the legislature.'" *Citing Miles Laboratories, Inc. v. Owl Drug Company*, 67 S.D. 523, 295 N.W. 292 (1940).

■ Appellant also argues that, on its face, SDCL 22–32–3 violates the fundamental principles of due process under the Fourteenth Amendment to the United States Constitution. Appellant argues that the law is (1) void for vagueness; (2) overbroad; and (3) fundamentally unfair as applied to him. We find these contentions of little merit. Briefly, we note that:

> One who attacks a statute, alleging unconstitutionality, must prove its invalidity beyond a reasonable doubt; if any reasonable basis may be conceived which supports the statute, it will be upheld, and the challenger must negate all possible bases. *Board of Ed. of Com. Sch. D. v. Board of Ed. of Hardin Co.*, 260 Iowa 217, 149 N.W.2d 187 (1967). All presumptions are indulged in favor of constitutionality. *Berens v. Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 80 S.D. 168, 120 N.W.2d 565 (1962).

*County of Tripp v. South Dakota*, 264 N.W.2d 213, 218 (S.D.1978); *see also Crowley v. State*, 268 N.W.2d 616 (S.D.1978); *State v. Strong*, 90 S.D. 652, 245 N.W.2d 277 (S.D.1976). Appellant has failed to carry this burden and, accordingly, we uphold the constitutionality of SDCL 22–32–3.

 Finally, appellant argues that the prosecutor's discretion to charge him with second-degree burglary is an invalid delegation of legislative power. However, appellant's claim is unsupported by relevant case law. Moreover, we believe that no delegation of power has been made, inasmuch as SDCL 22–32–3 is clear and unambiguous, and appellant's crime falls within its parameters.

Accordingly, the trial court is affirmed.

FOSHEIM, C.J., MORGAN, J., and HERTZ, Circuit Judge, acting as a Supreme Court Justice, concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

The facts of this case do not justify a charge of second-degree burglary and a sentence of one year in the South Dakota State Penitentiary. Thus, in the interest of justice, I would reverse appellant's burglary conviction, vacate the sentence therefor, and remand for a petty theft prosecution.

Essentially, we are confronted with this issue: Are all shoplifting cases in South Dakota prosecutable by a second-degree burglary charge? If, indeed, the prosecutors of this state have such discretion under our broad second-degree burglary statute, it is conceivable that an additional penitentiary will have to be constructed. Our present penitentiary has been filled to the maximum and is under federal constitutional attack in the federal courts. I take judicial notice of the proceedings in *Cody v. Hillard*, 599 F.Supp. 1025 (D.S.D.1984). In said litigation, the Honorable Donald J. Porter ordered the modification of numerous conditions and practices of confinement in South Dakota prisons.

Historically, at common law, burglary was defined as "the breaking and entering of the dwelling house of another, at night, with the intent to commit a felony therein." 3 C. Torcia, *Wharton's Criminal Law* § 326, at 186 (14th ed. 1980). *See also*, 12A C.J.S. *Burglary* § 5 (1980). Modern burglary statutes, however, define the offense as either the entering or remaining in a building *with the intent to commit a felony or some degree of larceny, see*, e.g., Cal. Penal Code §§ 459–60 (West Supp. 1985), and N.M.Stat.Ann. § 30–16–3 (1978); or *the unlawful entry or remaining* in a building with the intent to commit any crime, *see*, e.g., Neb.Rev.Stat. § 28–507 (1979), and Colo.Rev.Stat. § 18–4–203 (1978). South Dakota's second-degree burglary statute, however, is a hybrid, dreamed up by a code revision committee—not from the minds of legislators, for SDCL 22–32–3 proscribes the entry or remaining in an occupied structure with the intent to commit any crime therein. There was a vast amending of existing laws via ch. 158, S.D.Sess.Laws of 1976, repealing and reenacting of the laws, consolidating like criminal provisions and rewriting of the criminal code of this state. Out of this vastness, the present statute was birthed. The elements of second-degree burglary therefore *do not include an unlawful or unauthorized entry,* or the intent to commit a felony or some degree of larceny.[*] Thus, under SDCL 22–32–3, a person could be charged with second-degree burglary if he enters a tavern with the intent to write an insufficient funds check, *State v. Blair*, 273 N.W.2d 187, 188 (S.D.1979) (Zastrow, J., dissenting), or if he enters a friend's house with the intent to smoke marijuana. Note, *"Steal the Chicken at the Henhouse Door:" The South Dakota Burglary Statute,* 25 S.D.L.Rev. 158, 160 (1980), which law review article is a general indictment of this state's amorphous burglary statute. The second-degree burglary statute's application is extremely broad and expansive and encompasses numerous circumstances

---

[*] The South Dakota second-degree burglary statute is not designed, apparently, to protect the sanctity of a structure since permission to be there is irrelevant.

not within the traditional common law crime of burglary. The maximum penalty for second-degree burglary is fifteen years imprisonment in the State Penitentiary and/or a fine of fifteen thousand dollars. SDCL 22–6–1(5). I believe, however, that the legislature did not intend such a harsh punishment to be imposed under the circumstances recited above or contained in the case now at bar. Rather, I believe that the legislature was sold a bill of goods by some dreamers on a code revision committee and the legislators did not realize what they were doing. This second-degree burglary statute has a sweep whereby any and all crimes in occupied structures are amalgamated together by the same punishment depending upon the whim of the prosecutor. Prosecutors must have some channels of discretion and restraint. A legislature should not abdicate its constitutional duty to prescribe punishments. *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). In a different vernacular, a legislature, under the power given to it as elected representatives of the people, should prescribe proportionate punishments. If a legislature does not so prescribe, it is, in effect, delegating its power to the executive branch. In *Smith v. Goguen*, 415 U.S. 566, 575, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605, 613 (1974), it was held: "Statutory language of such a standardless sweep allows policemen, prosecutors, and juries to pursue their personal predilections. Legislatures may not so abdicate their responsibilities for setting the standards of the criminal law."

How can any shoplifter avoid *remaining* with intent to commit theft? Once, you see, the shoplifter has committed a theft, he remains in the store long enough to get out the front door. He must, of necessity, "remain" long enough to have the merchandise on him. Therefore, every South Dakota shoplifter is, by the decision of this Court today, a burglar. Millions of dollars of merchandise are lost to shoplifters, and I do not condone, for one minute, their activities. However, I fail to see how they can be called burglars.

In the present case, the State contends that appellant entered the supermarket with the intent to steal a frozen pizza. The State relies on a statement against interest to that effect. His entry was lawful or authorized in that he was a business invitee and the doors of commerce were open unto him, but unlawful or unauthorized entry is not a requisite under our burglary statutes. *Blair*, 273 N.W.2d at 188. In other words, there was no breaking or stealth in appellant's entrance to the store. The crime appellant intended to commit, and which he ultimately accomplished, to wit, petty theft in violation of SDCL 22–30A–17, is punishable by thirty days imprisonment in the county jail and/or a one hundred dollar fine. SDCL 22–6–2(2). Appellant was arrested for shoplifting, but he was later charged with second-degree burglary and after being convicted thereof, he was sentenced to one year in the penitentiary. This state and its legislature must make some serious decisions: Should shoplifters be subject to a second-degree burglary charge which could theoretically imprison any shoplifter for a period of fifteen years? Should shoplifters be branded "felons" with its concomitant debilitation? A conviction for a felony stays with a person for a lifetime and can prevent a citizen from holding office, securing employment, or holding a license. It is a deadly serious stigma.

Because I do not believe the legislature intended the harsh second-degree burglary punishment to be applicable to appellant's circumstances, and because I believe appellant's circumstances do not warrant its application, I would reverse his conviction and vacate his sentence with instructions to prosecute for petty theft. Appellant could be jailed for thirty days for such a conviction. Is a one-pizza theft properly a theoretical fifteen-year sentence or a thirty-day sentence?

If under some circumstances the statutory penalty is unduly harsh, it is the duty of the prosecutor, the court, and the correctional authorities to modify the charge, the sentence, or the period of confinement so that it will be commensu-

rate with the gravity of the crime and the harm or potential harm which is inflicted by the defendant.

*State v. Morris,* 281 Minn. 119, 124, 160 N.W.2d 715, 718 (1968). *See also, State v. McEwan,* 265 N.W.2d 818, 821 (Minn.1978). Justice cries out that the law would not lay an unequal hand on those who have committed intrinsically the same quality of offense. In South Dakota, may a prosecutor, in his unfettered discretion, charge party A with petty theft or shoplifting but party B with a felony, namely, second-degree burglary? For dissertation on why this is wrong, *see* the United States Supreme Court decision in *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).