2004 SD 72

**Douglas J. BLOCK and Elaine M. Block, Plaintiffs and Appellees,**

v.

**Merlyn W. DRAKE and Bonnie L. Drake, Defendants and Appellants.**

**No. 23013.**

Supreme Court of South Dakota.

Considered on Briefs April 26, 2004.

Decided May 26, 2004.

---

Jack Hieb of Richardson, Wyly, Wise, Sauck & Hieb, L.L.P., Aberdeen, South Dakota, Attorneys for plaintiffs and appellees.

William E. Coester, Milbank, South Dakota, Attorneys for defendants and appellants.

GILBERTSON, Chief Justice.

[¶ 1.] Merlyn Drake and Bonnie Drake (Drakes) appeal from various rulings of the circuit court concerning an on-going real estate dispute with Douglas J. Block and Elaine M. Block (Blocks). For the reasons expressed herein, we affirm the judgment of the circuit court in part and remand in part.

## FACTS AND PROCEDURE

[¶ 2.] This appeal revolves around a dispute between two neighbors owning property located near Enemy Swim Lake in Day County, South Dakota. At one point, Leo and Rose Fleischhaker (Fleischhakers) owned all the land at the heart of this dispute. In 1996, Fleischhakers sold a portion of their property known as Government Lot 7 (Lot 7) to the Blocks. Most of the Fleischhaker property directly abutting Enemy Swim Lake had been previously platted and sold to third parties. Drakes subsequently bought the remaining Fleischhaker property leaving them with land to the north, east and south of Lot 7. Both Blocks and Drakes also owned a lot which adjoined the lake.

[¶ 3.] After purchasing Lot 7, the Blocks made improvements to several already existing pasture trails on the property. Previously, Fleischhakers' had platted and recorded an easement across the property which allowed access to the lake lots. This easement has at all times remained private, and it has never been dedicated as a public road. In 1996, the Blocks wanted to improve the platted easement so they could obtain year-round access to their lake property. As a result of the topography, however, the path used by the lot owners did not correspond to the location of the easement on the plat.

[¶ 4.] The Blocks sought permission from the Drakes to improve a portion of the private road which ran across the Drakes' land in a northerly direction to Lot 7. Based on their assertion that any road improvement should be a cooperative project involving all the lot owners, the Drakes refused to grant permission to the Blocks. In response, the Blocks filed an action against the Drakes seeking court permission to build the access road outside of the recorded easement on the plat. A trial to the court was held in June of 1998. At the end of the case, the Blocks and Drakes entered into a stipulation agreement which formed the basis for the circuit court's judgment. Neither party appealed this judgment. Pursuant to the judgment, Drakes improved the road easements designated as Tracts "B" and "D" in 1998.

[¶ 5.] In the summer of 2002, the Sisseton–Wahpeton Sioux Tribe hired a registered land surveyor to ascertain the exact boundary of land it owned adjoining the property now in dispute. The surveyor determined that the location of the improved road easement on Tract "D" was actually on tribal land and not the Drake's land as the parties previously believed.

[¶ 6.] Eventually, a second dispute arose over access to Enemy Swim Lake on land owned by the Drakes north of Lot 7. The 1998 judgment had made reference to such access. After the 1998 judgment, the Drakes' platted and sold land which had

traditionally provided this access to the lake. The Drakes' then constructed a new access path or road. However, they put a gate at the south end of this property and locked it thereby preventing the public from accessing the newly constructed access path by vehicle. The exact location of the gate cannot be ascertained from the record.

[¶ 7.] In 2003, the Blocks sought to re-open the 1998 judgment by filing a pleading entitled "Motion to Hold Defendants in Contempt or for Alternative Relief" which requested:

1. The Drakes be held in contempt of court for failing to file an easement depicted as various tracts on the 1998 Judgment, and for failing to construct a road on their land depicted as Tract "D";

2. The Drakes grant an easement which allowed access to the south bank of Enemy Swim Lake for the purposes of ensuring the public would have unfettered access to that area.

The trial court generally ruled in favor of the Blocks but did not hold the Drakes in contempt. The court's order, however, made it clear that if the Drakes do not comply with its 2003 order, they will be held in contempt. The Drakes now appeal and raise three issues for our review:

1. Whether the trial court had jurisdiction to re-open the 1998 judgment.

2. Whether the trial court erred in ordering the relocation of the roadway designated as Tract "D".

3. Whether the trial court erred by requiring the Drakes to provide a public easement to Enemy Swim Lake and to unlock a gate currently blocking such public access by vehicle.

## STANDARD OF REVIEW

[¶ 8.] We review the trial court's findings of fact under the clearly erroneous standard. *City of Deadwood v. Summit, Inc.,* 2000 SD 29, ¶ 9, 607 N.W.2d 22, 25. "Clear error is shown only when, after a review of all the evidence, 'we are left with a definite and firm conviction that a mistake has been made.' " *New Era Mining Co. v. Dakota Placers, Inc.,* 1999 SD 153, ¶ 7, 603 N.W.2d 202, 204 (citation omitted). This Court reviews conclusions of law under the de novo standard with no deference afforded the trial court's decision. *Summit, Inc.,* 2000 SD 29, ¶ 9, 607 N.W.2d at 25. Statutory interpretation and application are questions of law. *Steinberg v. State Dept. of Military Affairs,* 2000 SD 36, ¶ 6, 607 N.W.2d 596, 599.

[¶ 9.] A trial court's decision to reopen a judgment pursuant to SDCL 15–6–60(b) will not be reversed absent an abuse of discretion. *Pesicka v. Pesicka,* 2000 SD 137, ¶ 18, 618 N.W.2d 725, 728.

## ANALYSIS AND DECISION

[¶ 10.] **1. Whether the trial court had jurisdiction to re-open the 1998 judgment.**

[¶ 11.] Drakes argue that since the 1998 judgment was final and never appealed by the Blocks, the trial court was without jurisdiction to reopen the case in 2003. SDCL 15–6–60(b) controls this issue and provides in relevant part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) Mistake, inadvertence, surprise, or excusable neglect;

(2) Newly discovered evidence which by due diligence could not have been dis-

covered in time to move for a new trial under § 15–6–59(b);

(3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) The judgment is void;

(5) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) *Any other reason justifying relief from the operation of the judgment.*

(emphasis added). The Drakes correctly point out that the first five criteria under this rule for re-opening do not apply here.[1] Subsection (6) which allows a case to be reopened for "any other reason justifying relief from the operation of the judgment" does apply, however. In response, the Drakes claim five years is not a "reasonable time." We disagree.

[¶ 12.] All parties to the 1998 litigation assumed the improved easement on Tract "D" was in compliance with that judgment until the 2002 survey by the Sisseton–Wahpeton Sioux Tribe. Furthermore, the dispute over the lake access did not exist until 2001 when the Drakes sold that portion of land which had previously provided the access contemplated by the 1998 judgment. Upon discovery of the survey problem, the Blocks promptly moved for a re-opening of the case.

[¶ 13.] "The purpose of Rule 60(b) is to preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of all the facts." *Pesicka*, 2000 SD 137, ¶ 17, 618 N.W.2d at 728 (citing *Hrachovec v.*

*Kaarup*, 516 N.W.2d 309, 311 (S.D.1994)). We have held that "[r]elief under SDCL 15–6–60(b) is granted only upon a showing of exceptional circumstances." *Divich v. Divich*, 2002 SD 24, ¶ 8, 640 N.W.2d 758, 760 (citing *Pesicka*, 2000 SD 137, ¶¶ 17–18, 618 N.W.2d 725, 728). We recognize, however, the "broad language [of 60(b)(6)] gives the courts ample power to vacate judgments whenever such action is appropriate to accomplish justice." *Zundel v. Zundel*, 146 N.W.2d 896, 901 (N.D.1966) (quoting 3 Barron & Holtzoff, Federal Practice and Procedure § 1329 at 417)). We will uphold a trial court's decision to exercise this power absent a showing of an abuse of discretion. *Pesicka*, 2000 SD 137, ¶ 18, 618 N.W.2d at 728. By 2002, the factual circumstances surrounding both Tract "D" providing access to the lake lots and the access path to the lake had changed. While the trial court was careful not to place blame on the Drakes for the erroneous placement of the path on Tract "D" which had been used for the previous 80 years in one form or another, the current factual situation rendered the Drakes in non-compliance with the 1998 judgment. The selling of the Enemy Swim access and the Drake's act of locking the gate for the new access path were also not addressed in the 1998 order. Thus, in order to enforce its 1998 judgment in light of the new factual developments, the trial court did not abuse its discretion in allowing a re-opening of this case in 2002. *Id.*

[¶ 14.] **2. Whether the trial court erred in ordering the relocation of the roadway designated as Tract "D".**

[¶ 15.] The 1998 judgment clearly required the Drakes to improve the easement on Tract "D" at their own expense by the end of 1998. Both the parties

---

**1.** Although the facts of this case suggest subsection (2) might apply because of "newly discovered evidence", such a motion must be brought within a year after the judgment.

believed the Drakes had fully complied with the judgment. Nevertheless, as explained above, the tribal survey determined the actual location of the improvement was on tribal land, essentially establishing the Drake's non-compliance with the 1998 judgment.

[¶ 16.] Drakes argue that since the path has been in its current location for decades and the Sisseton–Wahpeton Sioux Tribe has made no move to cut it off, they should not be required to build what amounts to a parallel road eighty feet to the east of the path they have already improved.[2] The 1998 judgment required them to build such a road on their own land and this has not been done. Moreover, the Blocks have agreed that nothing need be done until such time as the current access is cut, if ever. The 2003 order states that a new road would be constructed only if "the tribe or its successors or assigns terminate or substantially hinder access via the road that was built by the [Drakes]."[3] The 2003 judgment additionally states that should the Drakes and Blocks agree that construction of a new road is necessary, the cost will be born equally by the two parties. As the new road, if ever constructed, may extend northward into Lot 7 owned by the Blocks, both parties are directed to provide easements for its establishment.

[¶ 17.] The trial court's most recent order requires the Drakes to do nothing at present. It is only if current access is cut off that the court's order concerning construction of a new road to conform to the 1998 judgment will be required.[4] We affirm on this issue.

[¶ 18.] **3. Whether the trial court erred by requiring the Drakes to provide a public easement to Enemy Swim Lake and to unlock a gate currently blocking such public access by vehicle.**

[¶ 19.] Drakes take the position that no member of the public may access the lake without their permission. Blocks on the other hand argue that the public as well as the lot owners have unlimited lake access by the easement. Neither position concerning public access is supported by the current state of the record. For the reasons set forth, we remand to the circuit court for further proceedings on this matter. In so doing, we offer the following guidance.

[¶ 20.] In its 2003 decision, the trial court held one of the express provisions of the 1998 judgment was that the parties provide access to the south bank of Enemy Swim Lake so the public could access the same for hunting and fishing purposes. Additionally, it held the Drakes (and Blocks) were to grant easements across their properties so that all the lot owners would have access to their property. Finally, the trial court held that the Drakes' actions of padlocking the gate at the south entrance to this access easement "[were] not consistent with the Court's prior Judgment in this case."

---

2. Blocks also claim that there is a dispute concerning the granting of an easement over an area depicted as "B" on the 1998 judgment. Because the Drakes do not raise this point in their brief, it is deemed not to be before us.

3. The trial court also found the Drakes' mistake as to the location of the road to be in good faith and thus did not find them in contempt. However, if the new road is required to be constructed, failure of the Drakes to comply with the 2003 order may result in a finding of contempt.

4. In *Steiner v. County of Marshall*, 1997 SD 109, ¶ 23, 568 N.W.2d 627, 632, we held that a private party cannot obtain a prescriptive easement against a governmentally owned parcel of real estate.

[¶ 21.] As previously noted, the 1998 judgment was the result of a stipulation between the Drakes and Blocks. The relevant part of the judgment read as follows:

That Doug and Elaine Block agree to grant a 60–foot–wide easement across the existing improved roadway lying on their land and depicted with dashed lines on Exhibit A for ingress and egress to Lots A through U and Government Lot 6 and that portion of Government Lot 4 that lies to the south of the south bank of Enemy swim creek inlet. Such easement is granted exclusively for said property owners and expressly excludes any access right to that portion of Government Lot 5 that lies north of the Enemy Swim creed inlet. This easement will be perpetual and run with the land. In addition, Doug and Elaine Block agree to grant an easement across their land along the same route as the easement described previously in this paragraph which easement shall be to the public for the sole purpose of *allowing the public to access the south bank of the Enemy Swim creek inlet to use this area for hunting and fishing.*

(emphasis added). In the next paragraph of the judgment, the Drakes agreed to grant an easement which would "connect the roadway on the south end of the plat to the roadway depicted with dashed lines on Exhibit A and to extend the roadway to all properly lying to the south bank of the Enemy Swim creek inlet at the north end of the plat." In its 2003 "findings" contained in the Order, the trial court held:

The Court finds that one of the express provisions of the previous Judgment entered in this case was that the parties provide access to the south bank of the Enemy Swim Creek inlet so the public could access the same for hunting and fishing purposes.

[¶ 22.] According to SDCL 43–13–5, "[t]he extent of servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired." Under this statute, neither the physical size nor the purpose or use of the easement may be expanded or enlarged beyond the terms granting the easement in the court's 1998 judgment. *Knight v. Madison,* 2001 SD 120, ¶ 6, 634 N.W.2d 540, 542 (citing *Townsend v. Yankton Super 8 Motel,* 371 N.W.2d 162, 165–66 (S.D.1985)); *see Kokesh v. Running,* 2002 SD 126, ¶ 12, 652 N.W.2d 790, 793. "Unless the owner of the servient estate expressly agrees otherwise, the owner reserves the right to use the property in any manner or for any purpose, so long as the owner does not interfere with the use or enjoyment of the easement." *Knight,* 2001 SD 120, ¶ 7, 634 N.W.2d at 543.

[¶ 23.] Although there is some reference to a public's right of use to the easement, it is clear that it remains a private easement and was never dedicated to the public use. *See generally Selway Homeowners Assoc. v. Cummings,* 2003 SD 11, ¶ 21, 657 N.W.2d 307, 313–14 (defining "dedication" as "devotion of property to public use" and recognizing "the intention of the owner to dedicate" and public acceptance thereof as the essential elements of a valid dedication). Thus, the Drakes retained all rights to their realty not expressly granted or given away in the stipulation and accompanying judgment. On appeal, the Drakes argue that allowing unlimited public use was never their intent, and they point out such an interpretation renders the grant to the lot owners in the previous sentence redundant as they are part of the public in addition to being lot owners.

[¶ 24.] Unfortunately, the drafting of this disputed language is not without substantial vagueness. It is clear, however,

that the specific grant to the lot owners gave them access to their lots. From the record we are also unable to ascertain the exact location of the gate. We assume it is located somewhere in Government Lot 5 or Government Lot 6 and along the easement shown in the plat attached to the easement which the trial court ordered the Drakes to sign.

[¶ 25.] "The fee owner of a road has the right to erect a gate to limit public or third-party access to the road, as long as this does not interfere with the ingress and egress rights of the easement holder." *Knight*, 2001 SD 120, ¶ 8, 634 N.W.2d at 543. In *Knight*, we held the landowner retained the right to erect a gate. We note the Drakes did not explicitly give this right away, and we acknowledge that gates may serve a multitude of valuable purposes.[5] As we do not know the location of the gate, it is unknown whether the lot owners who have lots adjacent to Government Lots 5 and 6 have to go through it to reach their lots. We remand for further proceedings and findings as to whether the lot owners are affected by the gate and if so, what type of access to their lots they have been granted by the 1998 stipulation and other grants.

[¶ 26.] The right of the public to use the easement, however, was limited to "hunting and fishing." In an affidavit, Merlyn Drake said the easement at issue was given only to "anyone having permission from Defendant [the Drakes] to hunt and fish along the South bank of the Enemy Swim inlet creek and nothing else." Unfortunately for the Drakes, the vaguely drawn judgment did not explicitly require their permission for the public to enter.

Nevertheless, the judgment solely granted the public the right of hunting and fishing access to the lake. There was no explicit grant of vehicle access to the public inside the gate, and such a right cannot be automatically implied. We acknowledge that one does not need a vehicle to hunt or fish.[6] It also appears to be only a short walk to the lake. Unless granted away by easement, the owner of real estate retains the right to determine the extent of vehicular traffic he or she will allow on his or her property:

> Herein the [judgment] created an easement in favor of [the public] but did not define its terms. Thus, we rely on the general law of easements to determine its terms. We express no opinion on those written easements where the specific rights and obligations of the parties are completely set forth in the document. In those instances such rights and obligations are created and defined by the agreement itself.

*Knight*, 2001 SD 120, ¶ 10, 634 N.W.2d at 543, n. 3; *see Selway*, 2003 SD 11, ¶ 21, 657 N.W.2d at 314. Given this uncertainty, we remand to the trial court for further proceedings as to what access was granted to the public by the 1998 stipulation and judgment.

[¶ 27.] We affirm in part and remand in part to the trial court for further proceedings consistent with this opinion.

[¶ 28.] KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

[¶ 29.] SABERS, Justice, concurs in result.

---

5. Drakes' objection to the removal of the gate is based on their contention that "on a weekly basis vandalism has occurred to their fences, gates and enclosures allowing pastured cattle to roam outside the intended pasture."

6. Motor vehicle use while hunting is prohibited in certain instances. *See State v. Moschell*, 2004 SD 35, 677 N.W.2d 551. (citing ARSD 41:06:04:07).

SABERS, Justice (concurring in result).

[¶ 30.] It is neither necessary nor wise to reach Issue 1 because, in reality, this is an action to *enforce* the 1998 judgment, not to "open" or "re-open" it.

[¶ 31.] Even the majority opinion acknowledges that "the current factual situation rendered the Drakes in non-compliance with the 1998 judgment" and "the tribal survey determined the actual location of the improvement was on tribal land, essentially establishing the Drake's non-compliance with the 1998 judgment." This is an action to enforce the 1998 judgment, not to "open", nor to "re-open" it. Since the Drake's actions are out of compliance with the judgment, it is their actions which need to conform to the judgment, not *vice versa*.

[¶ 32.] We should not bend the law out of shape just because the parties misstate the issues. Therefore, I concur on the merits on Issues 2 and 3 only.