#23598-rev & rem-RWS

**2006 SD 23**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellant,

  v.

THOMAS SCOTT BURDICK,                    Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
AURORA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE RONALD K. MILLER
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

KATIE L. HANSEN
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                          and appellant.


DOUGLAS M. DAILEY
TIMOTHY G. BOTTUM of
Morgan, Theeler, Wheeler,
 Cogley & Petersen
Mitchell, South Dakota                    Attorneys for defendant
                          and appellee.

\* \* \* \*

ARGUED JANUARY 11, 2006

OPINION FILED **03/08/06**

#23598

SABERS, Justice

[¶1.] Thomas Burdick was charged with twenty counts of third degree burglary and twenty counts of petty theft. After a preliminary hearing, the circuit court dismissed all of the burglary counts. The state appeals from the circuit court's order. We reverse and remand.

## FACTS[1]

[¶2.] The defendant, Thomas Burdick (Burdick), was employed by Land O' Lakes as a milk truck driver and delivery man. Burdick's delivery route included the City of Plankinton, South Dakota. During a three-year period, Burdick delivered milk to "Ron's Market (the market)," a grocery store located in Plankinton. Burdick usually made deliveries to the market during late evening, or early morning hours.

[¶3.] The market conducts its retail business in the front of the building. Customers routinely have access to this portion of the building. The back of the building is used as a storage area. The market stores its grocery items on pallets, shelves, and in bulk coolers in this portion of the building. During non-business hours, the storage portion of the building is separated from the retail portion by a metal door. The market's owners secure the door from the retail portion of the market, using a metal bar. Outside access to the storage portion of the building is gained through a garage door.

---

1. The state and the defendant stipulated to these facts for purposes of the preliminary hearing.

[¶4.] The market's owners gave Burdick a garage door opener to allow him to have access to the storage portion of the building during non-business hours. Burdick made deliveries to the market during the years 2002, 2003, and 2004. On at least twenty occasions, Burdick would make the milk delivery, and then take one or more cases of soda pop without the owner's permission. The value of the soda pop never exceeded one hundred dollars.

[¶5.] The state charged Burdick with twenty counts of petty theft and twenty counts of third degree burglary. Burdick made a motion to dismiss the twenty burglary charges. After the preliminary hearing, the circuit court issued a written decision. It ruled that this Court's prior case law requires unauthorized or unlawful presence to sustain a burglary charge. Because the state stipulated to the fact that Burdick had permission to enter the building, the circuit court dismissed all of the burglary counts.

## Standard of Review

[¶6.] This case requires us to engage in statutory interpretation. Statutory interpretation is a question of law, reviewed *de novo*. MGA Insurance Co., Inc. v. Goodsell, 2005 SD 118, ¶9, 707 NW2d 483,485 (citing Block v. Drake, 2004 SD 72, ¶8, 681 NW2d 460, 462). The intent of the law is ascertained primarily from the language of the statute. *Id.* ¶16 (citing State v. Myrl & Roy's Paving, Inc., 2004 SD 98, ¶6, 686 NW2d 651, 653-654)). However, other enactments relating to the same subject are relevant in determining legislative intent. *Goodsell*, 2005 SD 118, ¶16, 707 NW2d at 486. When the language of a statute is clear and unambiguous, our

only function is to declare the meaning of the statute as clearly expressed. *Id.* ¶9

(citing *Myrl & Roy's Paving, Inc.*, 2004 SD 98, ¶6, 686 NW2d at 653-54).

## Decision

[¶7.]     In 1976, the South Dakota Legislature repealed the statute that

defined third degree burglary and replaced it with SDCL 22-32-8, which provided:

> Any person who enters or remains in an unoccupied structure, with intent to commit any crime therein, is guilty of third degree burglary. Third degree burglary is a Class 4 felony.

State v. Blair, 273 NW2d 187 (SD 1979). The statute had a broad sweep,

criminalizing the *entering or remaining* in an unoccupied structure, with the intent

to commit *any crime*.

[¶8.]     In *Blair*, this Court examined whether SDCL 22-32-8 "require[d] some

form of unauthorized entry by a person entering an unoccupied structure with the

intent to commit a crime." 273 NW2d at 187. Blair had entered a laundromat,

pried open coin boxes with a crow bar, and stole a case of soda pop. *Id.* He argued

that the burglary charge should be dismissed because he had entered the

laundromat during regular business hours and, was therefore authorized to enter.

This Court held that consent to enter the unoccupied structure was irrelevant. *Id.*

at 188. Justice Zastrow dissented, concerned primarily with the fact that "the

commission of any crime indoors would appear to be subject to a burglary charge

since the burglary statutes refer to entering or remaining...." *Id.* at 188 (Zastrow,

J., dissenting) (internal quotations omitted)).

[¶9.]     In *State v. Shult*, this Court upheld a second degree burglary

conviction where the defendant entered a convenience store during regular business

hours and attempted to steal a frozen pizza. 380 NW2d 352 (SD 1986). Justice Henderson dissented, generally indicting the burglary statutes for being "extremely broad and expansive and encompass[ing] numerous circumstances not within the traditional common law crime of burglary." *Id.* at 357 (Henderson, J., dissenting).

[¶10.] Two years after *Shult*, this Court decided *In the Matter of T.J.E.,* 426 NW2d 23 (SD 1988). In that case, an eleven-year-old girl had been adjudicated delinquent after the circuit court found she committed second degree burglary by eating a chocolate Easter egg in a department store without paying. *Id.* at 23. The circuit court found that T.J.E. remained in the store with the intent to commit a crime. *Id.* at 24. This Court reversed. It refused to give the word "remains" its literal meaning, noting that to do so would produce an absurd result. *Id.* Ultimately, the Court held that the word "remains" means unlawful presence or presence without authority in the structure. *Id.* at 25. The Court distinguished *Blair* on the grounds that anyone who enters a structure, even one of public accommodation, with the intent to commit a crime, has done so unlawfully and without authority. *Id.*

[¶11.] The Legislature amended SDCL 22-32-8 in response to the *T.J.E.* decision. SDCL 22-32-8 now provides:

> Any person who enters an unoccupied structure, with the intent to commit any crime *other than the act of shoplifting or retail theft as described in chapter 22-30A constituting a misdemeanor*, or remains in an unoccupied structure after forming the intent to commit any crime *other than shoplifting as described in chapter 22-30A constituting a misdemeanor*, is guilty of third degree burglary. Third degree burglary is a Class 4 felony.

(emphasis added).   The Legislature made an exception to the burglary statute for shoplifting or retail theft that amounted to a misdemeanor.  It did not require an unlawful presence or presence without authority as we held in *T.J.E.*  Nor did it eliminate the possibility that an individual could be guilty of burglary when forming intent to commit any crime and "remaining" in the structure.  In short, the amendment to SDCL 22-32-8 created an exception for shoplifters, but rejected this Court's reasoning in *T.J.E.*

[¶12.]     Despite the plain text of the statute, this Court continued to adhere to the rule set forth in *T.J.E.*  In *State v. Derby*, this Court noted that "unlawful or unauthorized entry into a structure [is] an element of third-degree burglary."  462 NW2d 512, 513 (SD 1990).  Although the Court acknowledged the exception, it did not have occasion to apply it because Derby had gained access to the structure "only after removing a window of the establishment after business hours."  *Id.*

[¶13.]     In *State v. Oster*, the defendant was appealing his conviction of second degree burglary.  495 NW2d 305 (SD 1993).  Oster had driven his car off of the road during a snowstorm and could not get his car out of the ditch.  *Id.* at 307.  He walked to a nearby house and asked for assistance.  *Id.*  The owner of the house agreed to help Oster and invited him inside while he put on his boots.  While inside, Oster stole some cash and a check out of the man's wallet, which had been placed on the kitchen table.  *Id.*

[¶14.]     On appeal, Oster argued that his conviction should be overturned because he had been invited into the home and was therefore on the premises lawfully.  *Id.* at 311.  This Court agreed and reversed the conviction.  The Court

acknowledged that the plain text of SDCL 22-32-8 only provided an exception for shoplifting or retail theft. However, the Court continued to adhere to the rule in *T.J.E.* because "the statute still fail[ed] to remedy the problem that the commission of any crime indoors, no matter how severe, is subject to a felony burglary charge." *Id.* at 311. The dissent noted that continued application of the rule in *T.J.E.* was "in direct conflict with the obvious intent of the legislature and erroneous." *Id.* at 313 (Sabers, J., dissenting).

[¶15.]     In *State v. DeNoyer*, this Court unanimously sustained the second degree burglary conviction of a defendant who entered a woman's home and committed the crime of rape. 541 NW2d 725 (SD 1995). Two members of this Court voted to overrule *Oster* and put an end to the application of the rule in *T.J.E. Id.* at 733. They noted that the plain language of the burglary statute "simply requires that the person remain in the structure after forming the intent to commit a crime." *Id.* at 733. Although Justice Konenkamp had "misgivings about *State v. Oster*," he did not believe it was necessary to overrule *Oster* to reach the result in the case.[2] *Id.* at 734. Despite the fact that *DeNoyer* was a plurality opinion, our subsequent opinions recognized it as overruling *Oster*. *See* State v. Sorenson, 2000 SD 127, ¶6, 617 NW2d 146, 148 (noting *Oster* had been overruled by *DeNoyer*); State v. Alidani, 2000 SD 52, ¶9, 609 NW2d 152, 155.

---

2.     Justice Miller and Justice Amundson also found it unnecessary to overrule *Oster*. However, Justice Miller's concurrence did recognize that "the plain language of the statute does not mandate criminal intent be formed only at the time of entry." *Id.* at 734 (Miller, J., concurring).

[¶16.]　　　　It is through these precedents that we analyze the present case. In doing so, we start with the plain language of SDCL 22-32-8. That language clearly indicates the Legislature's intent to criminalize the entering or remaining in an unoccupied structure with the intent to commit any crime. The only exception that appears in the statute is for shoplifting or retail theft. Despite the rationales in *T.J.E.*, *Derby*, and *Oster*, the Legislature did not make an exception for people who had entered a structure lawfully, or with consent from the owner. Had the Legislature intended to codify the exception set forth in those cases, it easily could have done so. Instead, the statute has remained the same during the last sixteen years.

[¶17.]　　　　Those Justices that have supported a requirement of unlawful or unauthorized entry have been primarily concerned with the broad reach of conduct the statute encompasses. *See Blair*, 273 NW2d at 188 (Zastrow, J., dissenting) (remarking that writing an insufficient funds check may constitute burglary under the statute); *Shult,* 380 NW2d at 357 (Henderson, J., dissenting) (hypothesizing that an individual who enters a friend's house with the intent to smoke marijuana could be charged with burglary).[3] The Legislature would have been aware of these writings, yet it only provided exceptions for shoplifting and retail theft.

---

3.　　The plain language of the statute does create an almost infinite amount of situations that could hypothetically be categorized as burglary. For example, the State conceded at oral argument that one could be charged with burglary for committing a computer crime in one's own home. However, our duty is to interpret the statute as written and apply it to the facts at issue. It is not for this Court to make individualized policy judgments and second guess the Legislature's judgment as to what conduct should or should not be criminal.

[¶18.]    Burdick puts forth many of the same policy arguments as the dissenters in *Shult* and *Blair*.  However, it is the province of the Legislature to define what conduct is criminal and provide appropriate punishment.  The separation of powers would be meaningless if the judiciary were able to create exceptions to a criminal law based upon its notion of fairness.  *See* United States v. Jones, 542 F2d 661 (6thCir 1976) ("It is not for this Court to question the wisdom of Congress and to establish an implied exception to a federal statute by judicial fiat.").  As the dissent in *Oster* remarked:

> The purpose of the legislative branch is to enact the laws.  The purpose of the judicial branch is to interpret and enforce the laws.  It is important to refresh our memories occasionally, lest we forget.

495 NW2d at 313 (Sabers, J., dissenting).  The terms of SDCL 22-32-8 are clear and unambiguous.  We must accept what "the legislature has said--and has not said-- rather than attempt to rewrite the law to conform with what we or others think it should have said."  *Goodsell,* 2005 SD 118, ¶29, 707 NW2d at 488 (quoting Petition of Famous Brands, Inc., 347 NW2d 882, 885 (SD 1984)).  We hold that SDCL 22-32-8 does not require unlawful presence or presence without authority.  Third degree burglary only requires that a defendant enter or remain in an unoccupied structure with the intent to commit any crime other than shoplifting or retail theft.

[¶19.]    Burdick points out that the Legislature has amended SDCL 22-32-8 effective July 1, 2006, and will require a showing that the defendant was not privileged to enter or remain in the structure.  Burdick is correct, but that amendment does not take effect until July 1, 2006.  We cannot apply an amendment

prior to its effective date. The decision of the circuit court is reversed, and this matter is remanded for trial.

[¶20.]        Reversed and remanded.

[¶21.]        GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, concur.

[¶22.]        MEIERHENRY, Justice, dissents.


MEIERHENRY, Justice (dissenting).

[¶23.]        I dissent. The majority's interpretation of the statute casts the net of the burglary statute so expansively that it ensnares any offense committed indoors, no matter how petty. Thus, dropping a candy wrapper on the floor, illegally downloading music from the internet, taking a towel from a motel, and walking out of a bar with a glass all become felonies punishable by ten to twenty-five years in the penitentiary. Common sense should tell us this was not the intent of the legislature.

[¶24.]        At common law, burglary was defined as "the breaking and entering of the dwelling house of another in the nighttime with the intent to commit a felony." State v. Pellegrino, 1998 SD 39, ¶14, 577 NW2d 590, 596 (citation omitted). As we have recognized,

> "[T]he offense of burglary at common law was considered one aimed at the security of the habitation rather than against property. That is to say, it was the circumstance of midnight terror aimed toward a man or his family who were in rightful repose in the sanctuary of the home, that was punished, and not the fact that the intended felony was successful. Such attempted immunity extended to a man's dwelling or mansion

> house has been said to be attributable to the early common-law principle that a man's home is a castle."

State v. Celli, 263 NW2d 145, 147 (SD 1978) (quoting Smart v. State, 244 Ind 69, 72, 190 NE2d 650, 652 (1963)). As evidenced by statute, however, our Legislature broadened the definition of burglary, *see, e.g.*, SDCL 22-32-3; SDCL 22-32-8; SDCL 22-32-17, and our decisions have done the same.

[¶25.] As of July 1, 2006, however, burglary statutes will not apply to a person who has privilege to enter a structure. The statute which defines third-degree burglary, in its entirety, will provide:

> Any person who enters or remains in an unoccupied structure, other than a motor vehicle, with intent to commit any crime, unless the premises are, at the time, open to the public or the person is licensed or privileged to enter or remain, is guilty of third degree burglary. Third degree burglary is a Class 4 felony.

SDCL 22-32-8 (effective July 1, 2006). The change to SDCL 22-32-8 reflects a legislative determination that burglary has been too broadly defined. It effectively repeals our cases that find consent irrelevant. This change not only prevents shoplifters from being charged with felony burglary, but it also prevents the application of burglary statutes to the commission of any crime, no matter how severe, indoors.

[¶26.] This change, however, comes too late for Burdick. Even though Burdick was privileged to enter the market, a broad interpretation of the current statute punishes his conduct—conduct which would not be punishable under the amended version of SDCL 22-32-8 which takes effect July 1, 2006. Also unfortunate for Burdick is the fact that he took the soda from the storage area of the market, for if he would have taken merchandise displayed or offered for sale, his conduct would

have fallen within the shoplifting or retail theft exception to the current version of SDCL 22-32-8. *See* SDCL 22-30A-19.1 (defining liability of a shoplifter to a merchant as the amount owed by "[a]ny adult . . . who takes possession of any goods, wares, or merchandise displayed or offered for sale by the store or other mercantile establishment without the consent of the owner or seller and with the intention of converting the goods to the person's own use without having paid the purchase price"). We continually profess our canon of construction which requires us to avoid interpreting a statute so as to achieve an absurd result. *See, e.g.*, State v. Brekke, 2005 SD 31, ¶15, 694 NW2d 46, 50. The result reached by the majority violates that canon. The possibility of 200 years in prison for taking 20 cases of soda is an absurd result. I would affirm the trial court.