Gerard MEYERINK, Don Vanderpol, Herb Hoffman, Dean Meyerink, Janice Porter, Richard Porter, Loren Pederson, Shirley Pederson, Gale Pederson, Wayne Blair, Rhoda L. Blair, Maynard R. Bridges, Kelly Bridges, Mary Cleo Schulte, Thomas Schulte, Lawrence Schulte, Ann Vanderpol, Frank Faber, Sherman Dyk, Ruth E. Vanden Bos, Delmer L. Vanden Bos, Harm Westernuis, Grace E. Fijala, Wm. Fijala, Harriet Meyerink, Vernon Van Duesseldorf, Bertha Kuipers, Harm A. Kuipers, Bob Cwach and Jim Hoffman, Plaintiffs and Appellants,

v.

NORTHWESTERN PUBLIC SERVICE COMPANY, and the State of South Dakota, By and Through its Division of Railroads, Defendants and Appellees.

No. 15127.

Supreme Court of South Dakota.

Argued April 21, 1986.

Decided July 9, 1986.

Rick Johnson, of Johnson, Eklund & Davis, Gregory, for plaintiffs and appellants.

Everett E. Hoyt, Alan D. Dietrich, Huron, for appellee, Northwestern Public Service Co.

James I. Hare, Asst. Atty. Gen., Pierre, Mark V. Meierhenry, Atty. Gen., on brief, Pierre, for appellee, State of S.D.

FOSHEIM, Chief Justice.

Plaintiff Landowners (Landowners) appeal from a summary judgment in favor of Northwestern Public Service Company (NWPS) and the State of South Dakota. We affirm.

Around 1900 the Chicago, Milwaukee, and St. Paul Railway Company (Railroad) acquired a 200 foot strip of land in Charles Mix County between Geddes and Platte. Deeds were conveyed from the landowners to Railroad. A standard "right-of-way" form, supplied by Railroad, was used.

In 1980, Railroad went bankrupt and the South Dakota Railroad Authority (Rail Authority or State) acquired the Railroad's interest in the landstrip. In 1984, Northwestern Public Service Company applied to the Rail Authority for permission to place a power line on the landstrip. A "Utility Crossing Agreement" was executed in June, 1984. Present adjoining landowners were contacted by NWPS about the pending construction and need for additional access. Landowners were told they could avoid construction over their property at their own expense. Consequently, in June, 1985, Landowners initiated this action to set aside the agreement, enjoin construction, and recover any damages. Landowners specifically challenged State's authority to give NWPS access to the landstrip.

The circuit court denied Landowners' request for a temporary injunction. Summary judgment for NWPS and State was entered in August, 1985, on the basis of the transcript and evidence presented at the earlier injunction hearing. The trial court concluded that: (1) it had jurisdiction, (2) Landowners failed to establish liability, (3)

State holds the Landstrip in fee, (4) State properly granted a use of the landstrip to NWPS, and (5) Landowners will not sustain compensable damages as a result of the location of the power lines on the landstrip.

When reviewing a summary judgment, we are governed by *Wilson v. Great Northern Railway Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968):

(1) The evidence must be viewed most favorable to the non-moving party; (2) The burden of proof is upon the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law; (3) Though the purpose of the rule is to secure a just, speedy and inexpensive determination of the action, it was never intended to be used as a substitute for a court trial or for a trial by jury where any genuine issue of material fact exists. (4) A surmise that a party will not prevail upon trial is not sufficient basis to grant the motion on issues which are not shown to be sham, frivolous or so unsubstantial that it be obvious it would be futile to try them. (5) Summary judgment is an extreme remedy and should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue as to material fact should be resolved against the movant. (6) Where, however, no genuine issue of fact exists it is looked upon with favor and is particularly adaptable to expose sham claims and defenses.

*Id.* at 212, 157 N.W.2d at 21 (footnotes omitted); *Bayer v. Employers Reinsurance Corp.*, 383 N.W.2d 858, 861 (S.D. 1986).

A review of the record and consideration of inferences most favorable to the non-moving party, leads us to conclude that the trial court properly awarded summary judgment against Landowners. We ultimately, however, base our decision on jurisdictional grounds rather than those espoused by the trial court. *Cook v. Rezek*, 296 N.W.2d 731, 733 (S.D.1980); *see also Barger for Wares v. Cox*, 372 N.W.2d 161, 168 (S.D.1985).

I.

Landowners initially argue that State holds a mere easement for railroad purposes only and, therefore, cannot increase the burden on that easement by permitting construction of public utility power lines. Landowners further argue that even if State has sufficient interest in the right-of-way to increase the burden upon it, State did not follow required procedure in permitting NWPS' use and that power line construction constitutes a compensable taking of their property.

By statute, a fee title is presumed to be passed unless a lesser estate was intended. SDCL § 43-25-15.[1] In *Northwest Realty Co. v. Jacobs*, 273 N.W.2d 141 (S.D.1978), we held that when the term "right-of-way" is used in a deed, it usually indicates only an easement is being conveyed. *Id.* at 144. However, if the instrument considered as a whole indicates a fee title was intended by the parties, then the presumption of a fee title controls. *Id.* Further, only when construction of the instrument as a whole leaves the intention of the parties in doubt should consideration be given to the situation and circumstances of the parties at the time of the execution of the deed. *Id.* at 145.

Upon review of the deed between the railroad and Landowners' predecessors in interest, we note that it was captioned a "right-of-way deed." However, when the deed is considered as a whole, it is clear that transfer of a fee title,[2] not a lesser estate, was intended. The deed states that the landowners "will forever Warrant and Defend the title to the premises hereby conveyed...." That is clearly the lan-

---

1. This statute originated in 1887. Dakota Territory Compiled Laws, Civil Code § 3254(2) (1887).

2. Railroads were permitted by statute to purchase property. *See* Dakota Territory Revised Civil Code § 451 (1887).

guage of a conveyance in fee [3] or, more specifically, a warranty deed. *See* SDCL § 43–25–5. Easements are not so phrased. No ambiguity exists and we need not further examine the intention of the parties, consideration given, or circumstances at the time of execution. *Northwest Realty Co.,* 273 N.W.2d at 145.

## II.

Having concluded that a fee title was conveyed to the railroad and is now held by State, we must determine whether placement of the power lines on the landstrip by NWPS was properly authorized by State. Landowners strongly argue that SDCL § 5–2–11 requires the Governor's approval for any conveyance of title of, or grant of an easement over, land in which State holds title.

SDCL chapter 5–2 controls conveyances of land easements on state owned lands. SDCL § 5–2–10 authorizes state agencies and departments to grant perpetual easements on lands under their control for power lines. The procedure for exercising this authority is found in SDCL § 5–2–11. Upon application for easements of any kind on state lands, a resolution of the agency requesting the conveyance is to be forwarded to the Commissioner of School and Public Lands. *Id.* The Commissioner draws the easement or conveyance of title and it is submitted to the Governor for his signature. *Id.*

Portions of SDCL chapter 1–44 specifically govern the South Dakota Division of Railroads. Under SDCL § 1–44–20, the Division is empowered, "[n]otwithstanding any other provision of law," with the Governor and Railroad Board's approval to enter into agreements for, inter alia, the *acquisition* and *disposition* of rights-of-way and land. In contrast, SDCL § 1–44–28 empowers the Division to *manage* all real and personal property acquired for railroad purposes and secure available income therefrom. Further, SDCL § 1–44–28 empowers the Division's director to "negotiate, enter into, execute and issue leases, licenses, easements or other agreements as may be necessary to provide for the use of any property or facility not used directly in rail operations." This statutory authorization is specifically exempted from classification as administrative rules. SDCL § 1–26–1(7). However, the Railroad Board may implement the provisions of SDCL § 1–44–28 by resolution. This action may lead to a "contested case" [4] under the South Dakota Administrative Procedure Act. SDCL §§ 1–26–1(2) and 1–26–16 through –37.

We must look to rules of construction for guidelines to determine [5] which of the above code sections, if either, controls granting of a use to NWPS on the landstrip. Each statute must be construed according to its manifest intent as derived from the statute as a whole, as well as other enactments relating to the same subject. *Simpson v. Tobin,* 367 N.W.2d 757, 763 (S.D.1985). Words used by the legislature are presumed to convey their ordinary, popular meaning, unless the context or the

---

**3.** The terms used now carry, by statute, implied covenants. *See* SDCL § 43–25–6. Implied covenants of title were recognized by statute at the time of this conveyance. Dakota Territory Revised Civil Code § 628 (1887). It is not contended, however, that the landowners conveyed the "usual" covenants as contemplated by Dakota Territory Revised Civil Code, §§ 989 & 990 (1887).

**4.** SDCL § 1–26–1(2) provides:
"Contested case" means a proceeding, including but not restricted to ratemaking and licensing, in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing but the term shall not include the proceedings relating to rule-making other than ratemaking or student academic or disciplinary proceedings under the jurisdiction of the board of regents[.]

**5.** Construction of a statute is a question of law. *In re Petition of Famous Brands, Inc.,* 347 N.W.2d 882, 884 (S.D.1984). It is fully reviewable on appeal. *In re Change of Bed Category of Tieszen Memorial Home, Inc.,* 343 N.W.2d 97, 98 (1984). An agency's construction, however, will be given great weight only when the agency is given express statutory authority to interpret a statute necessary to its efficient administration. *Id.*

legislature's apparent intention justifies departure. *State v. Big Head*, 363 N.W.2d 556, 559 (S.D.1985). Where conflicting statutes appear, it is the responsibility of the court to give reasonable construction to both, and to give effect, if possible, to all provisions under consideration, construing them together to make them harmonious and workable. *Karlen v. Janklow*, 339 N.W.2d 322, 323 (S.D.1983); *Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292, 295 (S.D.1982). However, terms of a statute relating to a particular subject will prevail over general terms of another statute. *Id.; Clem v. City of Yankton*, 83 S.D. 386, 402, 160 N.W.2d 125, 134 (1968). Finally, we must assume that the legislature, in enacting a provision, had in mind previously enacted statues relating to the same subject. *State v. Feiok*, 364 N.W.2d 536, 539 (S.D.1985).

■ Here, we are able to give effect to both code chapters which are similar in some respects. The Governor's approval is required for a conveyance of, or an easement on, state owned lands, SDCL § 5–2–11, including acquisition and disposition of railroad right-of-ways. SDCL § 1–44–20. However, the Division of Railroads, through its director, is expressly authorized to manage railroad property, including issuance of easements and other agreements for the use of property not directly used in rail operations. SDCL § 1–44–28. Since SDCL § 1–44–28 governs a particular subject and was enacted after SDCL § 5–2–11,[6] we find it controls under the facts presented. We therefore conclude the Governor's approval of the use of the landstrip by NWPS was not required.

■ The Division of Railroads adopted "Railroad Property Management Guideline [for] Granting of Licenses or Permits—Except Agricultural Purposes" on March 15, 1984. These guidelines clearly apply to the use of the landstrip granted to NWPS. Further, these guidelines establish the right to hearing before the State Railroad Board by any party aggrieved by an action of the Department of Transportation.

This is not a situation where an absence of an adequate administrative remedy or agency inaction necessitates direct action in the circuit court. Consequently, Landowner's have no further judicial redress until they have exhausted this administrative remedy. SDCL § 1–26–30.2; *Light v. Elliott*, 295 N.W.2d 724, 725 (S.D.1980). Where the legislature provides a remedy before an administrative agency, that agency has exclusive primary jurisdiction which precludes the parties from directly seeking adjudication in a court. *Id.* at note (*citing Gottschalk v. Hegg*, 89 S.D. 89, 228 N.W.2d 640 (1975)); *In re Notice and Demand to Quash, Etc.*, 339 N.W.2d 785, 786 (S.D. 1983).

We affirm the summary judgment of dismissal.

MORGAN and WUEST, JJ., concur.

SABERS, J., concurs with writing.

HENDERSON, J., dissents.

SABERS, Justice (concurring).

I have no quarrel with the decision of the trial court or the Supreme Court, but it is necessary to review the facts which illuminate the various events of this transaction. At the turn of the century, the Chicago, Milwaukee and St. Paul Railway Company (railroad), acquired right-of-way deeds over a strip of land 200′ wide in Charles Mix County between the towns of Geddes and Platte. The railroad right-of-way covers about 11½ miles in length and cuts diagonally through more than 30 quarters of farmland.

In about 1936, Northwestern Public Service Company (NWPS), constructed an electric transmission line from Geddes to Platte over a different route along the section lines. In the late 1970's, NWPS began considering updating that line and they

---

**6.** SDCL § 1–44–28 was adopted in 1981. SDCL § 5–2–11 was originally adopted in 1951 and revised in 1960.

concluded that they could save about $250,-000 in costs if they could build along the diagonal railroad right-of-way as opposed to following their existing route.

Trains ceased to run on this line about ten years ago. In 1980, the railroad company went into bankruptcy and on June 9, 1982, the South Dakota Railroad Authority (authority), acquired the right-of-way and conveyed its interest therein to the Division of Railroads for the State of South Dakota (Division of Railroads).

On May 25, 1984, NWPS applied to the Division of Railroads for pole and wire occupancy on the 11½ miles of this right-of-way. Based on this application, the Division of Railroads and NWPS entered into a "utility crossings agreement" on June 24, 1984.

This crossings agreement, in substance, gave NWPS a perpetual easement to use this property for the one-time price of $75, (stated to be for expenses in connection with the preparation and execution of the agreement), and $106 for each year of the lease. This lease agreement could be cancelled by NWPS upon sixty days notice without cause but the Division of Railroads could cancel only if NWPS violated the terms of the agreement.

The adjoining or abutting landowners learned of this agreement for the first time in April of 1985, when NWPS representatives began approaching them about using part of their land to build the line. When the landowners expressed discontent with the construction of the line through their property, they were told by NWPS representatives that the line could be rerouted around their respective lands if the landowners would pay NWPS' "actual costs" of rerouting the line. One landowner was quoted an expense of approximately $30,-000 to $35,000 per section, (this would amount to $225,000 to $262,000 for the entire line). In other words, this public service company was willing to sell to the landowners their right to use the line for a quarter of a million dollars even though they only paid $75 for same.

In order to soften the sting of the above argument, NWPS argued below that this project will save the company $250,000, which savings will be passed on to its customers. Even assuming this is so, it is still not right to do this at the expense of *all* of the taxpayers of the State of South Dakota.

All of the events referred to above between the railroad, the Railroad Authority, the Division of Railroads, and NWPS took place without any notice of any kind to adjoining or abutting landowners; no notice was given to the taxpayers in general; no environmental impact statement was filed; no approval by the Governor or the Public Utilities Commission of the State of South Dakota was obtained, and there was no consultation with the local county commission.

Although it is hard to decide whether this governmental agency and this public service company have "hand in hand, tiptoed or bulldozed their way through the legal tulips" with this "sweetheart deal", it does appear that it was done without any real regard for the rights of the landowners in question and at the expense of the taxpayers in general.

HENDERSON, Justice (dissenting).

I dissent. The Division of Railroads cannot be an island unto itself—isolating itself from state government and a responsibility to the citizens of this state. It must answer to some branch of government or it is a pure oligarchy. It has neither the right to give away state land nor to grant permanent easements for a paltry or nominal sum. Particularly—to an entity which is disassociated with the railroads. These easements were all but given away—free. This is unconscionable.

I would reverse the trial court and remand with instructions that the Division of Railroads prove in court (which is a ques-

tion of fact) that it followed the guidelines* which exist herein:

1.  Disposition of excess property.
2.  Leasing of state-owned industrial trackage.
3.  Granting of licenses or permits—except for agricultural purposes.

Finally, the easement was not submitted to the Governor for approval as required by SDCL 5–2–11. Therefore, it is a nullity. This case—this entire proceeding—should go back to the drawing board for a little democracy (government by the people, Webster's Dictionary calls it).

---

* Depositions on file reflect that guidelines for this governmental body do exist, and the Director so acknowledged.