STATE of South Dakota, Plaintiff
and Appellee,

v.

Bryan FRYER, Defendant
and Appellant.

No. 17813.

Supreme Court of South Dakota.

Considered on Briefs Sept. 3, 1992.

Decided Feb. 17, 1993.

Mark Barnett, Atty. Gen., Charles D. McGuigan, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

David R. Wurm, Wurm and Hood, Rapid City, for defendant and appellant.

HENDERSON, Justice.

Bryan Fryer appeals a judgment of conviction for aggravated assault which requires him to pay $18,336.90 in restitution to an insurance company. Based upon our state statutes and decisional law in this state, we reverse the trial court's restitution order.

## FACTS

Fryer carried a gun while he participated in a drug deal. A disagreement broke out during the drug deal and Fryer pulled his gun and shot Russell Finch several times. Finch was seriously injured and required extensive medical care.

Fryer was charged with aggravated assault. Under a plea agreement, Fryer pled guilty and State agreed not to comment on sentencing. At the time of sentencing, Finch's medical bills had reached $19,336.90. Finch had insurance through MidAmerica Mutual Life Insurance Company (hereinafter "MidAmerica"), with a $1,000 deductible. The trial court sentenced Fryer to ten years in jail and ordered him to make restitution of $1,000 to Finch and $18,336.90 to MidAmerica. Fryer appeals that portion of the judgment requiring him to pay restitution to MidAmerica.

## ISSUE

We are confronted with this legal issue: Is an insurance company, indirectly affected by a crime, a "victim" entitled to restitution under South Dakota's victim restitution statutes?

## DECISION

State argues that when an insurance company pays an insured for injuries caused by a criminal, the insurance company becomes a "victim" entitled to relief under the restitution statutes. Thus, the resolution of this case depends on what the legislature intended when it used the term "victim." *Nelson v. School Bd. of Hill City, S.D.*, 459 N.W.2d 451 (S.D.1990); *Whitney v. AGSCO Dakota*, 453 N.W.2d 847 (S.D.1990).

■ When determining legislative intent, a "statute must be construed according to its manifest intent as derived from the statute as a whole." *Meyerink v. Northwestern Public Service Co.*, 391 N.W.2d 180, 183 (S.D.1986); *see also, AGSCO Dakota*, 453 N.W.2d at 851. Words used by the legislature are *presumed* to convey their ordinary, popular meaning. *Meyerink*, 391 N.W.2d at 183-84. *See also, Matter of Estate of Pejsa*, 459 N.W.2d 243 (S.D.1990); *Bryant v. Butte County*, 457 N.W.2d 467 (S.D.1990). "This Court will not enlarge a statute beyond its face where the statutory terms are clear and unambiguous in meaning." *Pejsa*, 459 N.W.2d at 246. What did South Dakota's legislature intend when it used the term "Victim?"

The South Dakota restitution statutes, at SDCL 23A-28-1, state:

It is the policy of this state that restitution may be made by each violator of the criminal laws *to the victims of his criminal activities* to the extent that the violator is reasonably able to do so. (emphasis added).

SDCL 23A-28-2(5) defines "Victim" as:

any person, as defined in subdivision (31) of § 22-1-2 [which includes corporations], who has suffered pecuniary damages as a result of the defendant's criminal activities.

"Pecuniary damages" are defined as:

all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event, except punitive damages and damages for pain, suffering, mental anguish, and loss of consortium. Without limitation, "pecuniary damages" includes damages for wrongful death.

SDCL 23A-28-2(3).

It is presumed that "victim" was used in its ordinary and popular meaning. *Meyerink*, 391 N.W.2d at 183-84. The ordinary and popular meaning of "victim" does not include insurance companies that suffer indirect damages because they pay their insured's claims.[1] In two recent cases, we applied the ordinary and popular meaning to the term "victim." *State v. No Neck*, 458 N.W.2d 364 (S.D.1990); *State v. Garnett*, 488 N.W.2d 695 (S.D.1992).

State now argues that the legislature intended that the term "victim" should be applied in a broader sense. However, State has not provided any evidence to rebut the presumption that the legislature intended the term to have its ordinary, popular meaning.[2] In fact, there is evidence that the legislature did *not* intend to deviate from the ordinary and popular meaning of "victim." Our opinion in *No Neck* was handed down on July 11, 1990. If our application of the ordinary and popular

1. Black's Law Dictionary 1405 (5th ed. 1979) defines "victim" as follows:

The person who is the object of a crime or tort, as the victim of a robbery is the person robbed.

Additionally, SDCL 22-1-2 provides:

Terms used in this title, and in other statutes which prescribe a penalty for a public offense, unless the context otherwise plainly requires, mean:

\* \* \* \* \* \*

(53) "Victim," any natural person against whom the defendant in a criminal prosecution has committed or attempted to commit a crime;

2. Both State and Fryer argue various administrative and public policy considerations which support their point of view. These considerations were or should have been considered by the legislature when it adopted the statute. Since the statute is not ambiguous, this Court does not need to delve into the public policy considerations.

To a certain extent, State seems to argue that this Court should interpret the statute based on what this Court thinks would be the best public policy. This would clearly be an infringement on the province of the legislature. *See Allegheny Corp. v. Richardson, Inc.*, 463 N.W.2d 678 (S.D.1990).

meaning of the term "victim" was incorrect, the legislature could have amended the restitution statutes during its 1991 session.[3] It did not do so.

Rather, the 1991 South Dakota Legislature adopted a "Crime Victim's Compensation Program" and a "Crime Victim's Act," and in both acts, it defined "victim" in a manner consistent with the meaning we applied in *No Neck*.[4] Legislative intent is derived primarily from the language of the statute but it may also be derived from other enactments relating to the same subject. *Nelson*, 459 N.W.2d at 454.

State has not proven that the legislature intended to use the term "victim" in a manner different than its ordinary and popular meaning.[5] Here, the legislature was aware of *No Neck* and did not take the opportunity to abrogate it. We place significance upon such inaction.

In this scenario, Fryer shot Finch. Finch is the direct victim of the crime and is the person ordinarily and popularly conceived of as the "victim." MidAmerica was indirectly affected by Fryer's actions because it insured Finch. However, MidAmerica is simply not a "victim" in the ordinary and popular sense of that word. Therefore, the trial court's order that Fryer pay restitution to MidAmerica is reversed.

 State closes by suggesting that if we determine that "victim" does not include insurance companies indirectly affected by crime, we should remand the case to the trial court and order that the full $19,-336.90 be awarded to Finch. This suggestion is rejected for two reasons. First, doing that which the State suggests would circumvent the statute by allowing the trial court to do indirectly that which it could not do directly, i.e., require restitution to someone other than a "victim." Second, Fryer is entitled to a hearing on restitution. *State v. Wolff*, 438 N.W.2d 199 (S.D.1989). At this hearing, it appears he would be able to establish that Finch had only suffered $1,000 in pecuniary damages because the remainder was paid by insurance. We reverse the trial court's order that requires Fryer to make restitution of $19,336.90 to MidAmerica. Our decision in no way affects MidAmerica's right to pursue other appropriate legal actions to recover from Fryer.

WUEST, and SABERS, and AMUNDSON, JJ., concur.

MILLER, C.J., concurs in result, without writing.

---

3. The legislature has a special council which is specifically directed to review all of this Court's opinions and recommend legislative amendments in response thereto. SDCL 2–9–1.1.

4. Under the crime .victim's compensation program, a "victim" is:
 any person who suffers personal injury or death *as a direct result* of:
 (a) A crime, including a federal crime occurring in this state;
 (b) A good faith effort by the person to prevent the commission of a crime; or
 (c) A good faith effort by the person to apprehend a person suspected of engaging in a crime.
 SDCL 23A–28B–1 (emphasis added).
 Under the crime victim's act a "victim" is:

 any person being *the direct subject of an alleged act,* which would constitute a crime of violence … If the victim does not survive such act or is unable to comment, the term "victim" means the members of the immediate family of the primary victim.
 SDCL 23A–28C–4 (emphasis added).

5. There are literally dozens of cases dealing with this issue in other jurisdictions. Those jurisdictions are divided on this issue. The legislative intent of another state's legislature is not necessarily indicative of what South Dakota's legislature intended. Each legislature adopts its own statutes, for its own reasons, and along the way creates its own legislative history. The only legislative history or intent that is particularly relevant in this case is that of the South Dakota legislature.