2005 SD 118

**MGA INSURANCE COMPANY, INC.**
A Texas Insurance Company,
Plaintiff and Appellant,

v.

Marshall GOODSELL, and Donita Goodsell, individually and as special administrator, parents or guardian of Jared Goodsell, a minor child, Derald W. Wiehl, as special administrator for the Estate of Gwen Dumarce, deceased, Infinity Insurance Company, an Alabama Insurance Company, Farm and City Insurance Company, Inc., an Iowa Insurance Company and Dakota Sioux Propane, Defendants.

and

Sandra White, as special administrator or guardian of Daniel Dumarce, a minor child, Defendant and Appellee.

No. 23610.

Supreme Court of South Dakota.

Considered on Briefs Oct. 3, 2005.

Decided Nov. 30, 2005.

**484**

Matthew J. Kinney, Kinney Law Office, Spearfish, South Dakota, Attorney for appellant.

Bram Weidenaar, James L. Hoy of Hoy Trial Lawyers, Sioux Falls, South Dakota, Attorneys for appellee.

SABERS, Justice.

[¶ 1.] Insurer moved for summary judgment to enforce its household exclusion, which, purported to deny coverage to relatives residing with a permissive driver. The circuit court denied the motion and held the household exclusion void as a violation of public policy. We affirm.

**FACTS**

[¶ 2.] Lorenzo and Angelica Sanchez purchased an automobile insurance policy from MGA Insurance Company (MGA). The policy covered the Sanchez's 1989

* MGA sued several parties in addition to White.

Chevrolet Camaro with liability limits of $25,000 per person.

[¶ 3.] Gwen DuMarce and her son, Daniel, had been living with Sanchez's brother, Escubio. The three of them were living in Escubio's mobile home in Madison, South Dakota. However, Gwen was contemplating moving to Sisseton with Daniel.

[¶ 4.] Gwen received permission from Lorenzo to borrow the Camaro on July 27, 2002. She decided to drive with Daniel to Sisseton for the weekend. During the drive, Gwen allegedly tried to elude a highway patrol officer near Sisseton. The Camaro collided with a Dodge pickup, killing Gwen and seriously injuring Daniel. Daniels's maternal grandmother, Sandra White (White), was appointed his special administrator and guardian.

[¶ 5.] MGA brought this declaratory judgment action against White.* MGA claimed that it had no contractual duty to defend Gwen or provide liability coverage for claims by Daniel or those making claims on his behalf. In support of its claims, MGA cited the "Household Exclusion" section of its policy with Sanchez.

[¶ 6.] MGA moved for summary judgment on November 29, 2004. Neither party disputed any of the material facts. Instead, MGA maintained that the "Household Exclusion" provision barred any recovery by Daniel. That section is as follows:

EXCLUSIONS

This coverage does not apply: . . .

(10) For any bodily injury to:

  (a) You;

  (b) any other insured person under the policy;

None of them are involved with this appeal.

(c) any member of your family residing in the same household with you; or

(d) *any member of the family of any other insured person residing in the same household as that insured.*

(emphasis added). The definitions section of the policy defined "insured" as:

(a) you;

(b) a relative or resident using your insured car;

(c) *any other person using your insured car;*

(emphasis added).

[¶ 7.] The circuit court denied summary judgment, holding that SDCL 32–35–70 "does not authorize exclusion of coverage to a relative residing with a permissive user of an insured vehicle and any attempt by Plaintiff to exclude such coverage is contrary to public policy and unenforceable in accordance with *Cimarron Ins. Co. v. Croyle,* 479 N.W.2d 881 (S.D. 1992)." MGA raises one issue on appeal: Whether the trial court erred in ruling that SDCL 32–35–70 renders MGA's "Household Exclusion" clause unenforceable.

**Standard of Review**

[¶ 8.] Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15–6–56(c). Here, there are no genuine issues of material fact, so the question is whether the legal issue has been correctly decided. *Bego v. Gordon,* 407 N.W.2d 801, 804 (S.D.1987).

[¶ 9.] The proper interpretation of an insurance contract presents a legal question, reviewed de novo by this Court.

*Gloe v. Union Ins. Co.,* 2005 SD 30, ¶ 9, 694 N.W.2d 252, 256. Finally, "statutory interpretation and application are questions of law." *Block v. Drake,* 2004 SD 72, ¶ 8, 681 N.W.2d 460, 462.

The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute. The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used. Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed.

*State v. Myrl & Roy's Paving, Inc.,* 2004 SD 98, ¶ 6, 686 N.W.2d 651, 653–54 (citing *Martinmaas v. Engelmann,* 2000 SD 85, ¶ 49, 612 N.W.2d 600, 611).

**Decision**

[¶ 10.] In *Cimarron Ins. Co. v. Croyle,* we examined whether an insurer can exclude coverage to the named insured or any resident family member. 479 N.W.2d at 882. We viewed the insurer's exclusion in light of South Dakota's Financial Responsibility Laws. The public policy set forth in South Dakota's Financial Responsibility Laws was explained as strongly "favoring monetary protection and compensation for the benefit of those injured through the negligent operation of a vehicle." *Id.* at 884. Ultimately, we held that the insurer's household exclusion was void as contrary to that public policy, stating, "[insurer's] household exclusion effectively renders the [insured], and others like her, uninsured and thus unprotected, in violation of public policy." *Id.*

[¶ 11.] Our holding was underscored by the fact that:

> [T]his class of victims is the one most frequently exposed to the potential negligence of the named insured [*i.e.*, the operator]. Typical family relations require family members to ride together on the way to work, church, school, social functions, or family outings. Consequently, there is no practical method by which the class of persons excluded from protection by this provision may conform their activities so as to avoid exposure to the risk of riding with someone who, as to them, is uninsured.

*Id.* (citation omitted). Furthermore, the "vast majority of jurisdictions [had] [held] such household exclusions invalid under similar statutory schemes." *Id.*

[¶ 12.] The Legislature acted quickly to prospectively alter our decision in *Cimarron.* 1992 SD Sess Laws, ch 233, § 1 (current version at SDCL 32–35–70 (2004); *Isaac v. State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752, 756 n. 1 (S.D.1994)). The statute now provides in relevant part:

> An owner's policy of liability insurance ... shall insure the person named therein and any other person as insured, using any insured vehicle or vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of the vehicle or vehicles[.] The policy may exclude or limit coverage pursuant to § 58–11–9.3 or for a relative residing in the *named insured' s* household.

SDCL 32–35–70 (emphasis added).

[¶ 13.] The amendment allows insurers to issue motor vehicle policies with resident family member exclusions. *Employers Mutual Casualty Co. Inc. v. State Auto Ins.*, 2001 SD 34, ¶ 11, 623 N.W.2d 462 (citing *Isaac*, 522 N.W.2d at 756 n. 1).

The Legislature, however, did not alter the statute in a manner that changes its underlying policy of "favoring monetary protection and compensation for the benefit of those injured through the negligent operation of a vehicle." Instead, the amendment provides an exception that permits insurers to exclude coverage from a specific class of insureds: relatives residing in the named insured's household. *See* SDCL 32–35–70.

[¶ 14.] The effect the amendment had on our decision in *Cimarron* is to preclude a similar result in future cases. Policies that exclude coverage for relatives residing in the named insured's household are not contrary to public policy. While the result reached in *Cimarron* is no longer obtainable, the rationale remains alive and well. South Dakota's Financial Responsibility Law continues to mandate coverage for those injured.

[¶ 15.] We examine whether in amending SDCL 32–35–70, the Legislature intended to permit insurer's to exclude coverage for relatives (of a permissive driver) residing with a permissive driver. In doing so, we adhere to our longstanding precedent involving statutory construction.

[¶ 16.] The intent of the law is "ascertained primarily from the language of the statute." *Myrl & Roy's Paving, Inc.*, 2004 SD 98, ¶ 6, 686 N.W.2d at 654. "When the language of the statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed." *Id.* However, we are not confined to the language of the statute at issue. Instead, "enactments relating to the same subject" are also relevant in determining legislative intent. *Gloe v. Iowa Mutual Ins. Co.*, 2005 SD 29, ¶ 11, 694 N.W.2d 238, 242 (noting

that this Court construes UM and UIM statutes together).

[¶ 17.] There are instances when it is necessary to look beyond the express language of a statute in determining legislative intent. Most notably, when the language is ambiguous, unclear, or if confining ourselves to the express language would produce an absurd result. *Myrl & Roy's Paving, Inc.*, 2004 SD 98, ¶ 6, 686 N.W.2d at 654; *Moeller v. Weber*, 2004 SD 110, ¶ 46, 689 N.W.2d 1, 16 ("we must fall back on the rule of statutory construction that requires us to give a sensible reading to statutes").

[¶ 18.] An example of this Court going beyond the express language of a statute is found in *DeSmet Ins. Co. of S.D. v. Gibson*, 1996 SD 102, 552 N.W.2d 98. *DeSmet* examined whether an insurer may exclude uninsured motorist coverage to a household family member residing with the named insured. *Id.* ¶ 4. South Dakota's uninsured motorist statute did not expressly authorize the exclusion. However, the post *Cimarron* amendment to SDCL 32–35–70 permits insurer's to exclude household residents of the named insured from liability coverage. As a result, this Court went beyond the language in the uninsured motorist statute and found that the exclusion was not inconsistent with public policy. A contrary holding would have "subverted the manifest purpose of the legislative amendment" to SDCL 32–35–70. *DeSmet*, 1996 SD 102, ¶ 7, 552 N.W.2d at 100.

[¶ 19.] Justice Konenkamp, writing for a unanimous Court, pointed out the general rule of statutory construction: "courts should not enlarge a statute beyond its declaration if its terms are clear and unambiguous." *Id.* (citing *State v. Fryer*, 496 N.W.2d 54, 55 (S.D.1993)). He went on to write:

[I]n cases where a literal approach would functionally annul the law, the cardinal purpose of statutory construction—ascertaining legislative intent—ought not be limited to simply reading a statute's bare language; we must also reflect upon the purpose of the enactment, the matter sought to be corrected and the goal to be attained.

*Id.* Thus, exclusions can be consistent with public policy even if the "enactments [do] not precisely contemplate [the] circumstances." *Id.*

[¶ 20.] In the present case, we are not faced with an issue where a literal interpretation of SDCL 32–35–70 would functionally annul it, or produce an absurd result. Nor are the terms of that statute ambiguous. Consequently, it is not necessary to look beyond the express language of the statute to resolve this issue.

[¶ 21.] The MGA policy defined an "insured" to include not only the named insured, but also any other person who had permission to use the named insured's vehicle. It is undisputed that Gwen had permission to drive the Sanchez's Camaro. Thus, Gwen was an "insured" as defined by the policy.

[¶ 22.] The policy purports to exclude coverage for bodily injury to "any member of the family of any other insured person residing in the same household as that insured." Daniel is Gwen's son. It is undisputed that Daniel was residing with Gwen. Consequently, MGA would have no liability for any injuries suffered by Daniel if the policy provision is enforceable.

[¶ 23.] The first portion of SDCL 32–35–70 (the omnibus clause) refers to the named insured as "the person named therein." It then refers to permissive drivers as "insured." The Legislature clearly delineated between a "named insured" and an "insured." Thus, the statute not only recognizes the difference be-

tween "named insured" and "insured," but it only permits an insurer to limit coverage for a relative residing in "the named insured's household." SDCL 32–35–70. Had the Legislature intended to allow household exclusions to apply to relatives that resided with a permissive driver, it could have said so.

[¶ 24.] It is undisputed that the named insureds in this policy are Lorenzo and Angelica Sanchez. MGA does not contend that Gwen or Daniel DuMarce were relatives residing with the Sanchez's. MGA is relying on the policy provision that excludes relatives residing with a permissive driver. Because SDCL 32–35–70 only permits insurers to exclude coverage of relatives residing with the "named insured," we hold that MGA's attempted exclusion is invalid as a violation of public policy.

[¶ 25.] Alternatively, even if we examine the public policy of South Dakota's Financial Responsibility Law under the factors provided in *DeSmet,* we note that it continues to "create[ ] a strong public policy favoring monetary protection and compensation for the benefit of those injured through the negligent operation of a vehicle." *Cimarron,* 479 N.W.2d at 884.

[¶ 26.] By amending SDCL 32–35–70, the Legislature did not change the public policy of the statute. It simply excepted the "named insured" from that public policy. The public policy of the statute remains the same as does the purpose of the mandated coverage, the matter sought to be corrected, and the goal to be attained. *DeSmet,* 1996 SD 102, ¶ 7, 552 N.W.2d at 100.

[¶ 27.] MGA cites *Nodak Mutual Ins. Co. v. Wacker* for the proposition that insurers can exclude coverage of relatives residing with a permissive driver. 154 N.W.2d 776 (N.D.1967). However, in *Nodak,* the North Dakota Supreme Court was only interpreting the underlying insur-

ance contract. *Id.* The present case is more about statutory interpretation than it is contract interpretation.

[¶ 28.] MGA also asserts that a permissive driver's rights are derivative. It argues that because a permissive driver receives the benefits of a named insured's coverage, they should also be subject to the exclusions from such coverage. In addition, MGA argues that household exclusions prevent collusive claims amongst family members. *Kentucky Farm Bureau Mutual Ins. Co. v. Harp,* 423 S.W.2d 233, 234–35 (Ky.1967). Despite those arguments, we are satisfied that MGA's purported exclusion is contrary to South Dakota law. *See Kremer v. American Family Mut. Ins. Co.,* 501 N.W.2d 765, 768–69 (S.D.1993) (rejecting prevention of collusion as a policy that would justify consent to be bound provisions).

[¶ 29.] Even if MGA were correct, we cannot rewrite the statute. Instead, we must accept "what the legislature has said—and has not said—rather than attempt to rewrite the law to conform with what we or others think it should have said." *Stover v. Critchfield,* 510 N.W.2d 681, 686 (S.D.1994) (quoting *Petition of Famous Brands, Inc.,* 347 N.W.2d 882, 885 (S.D.1984) (internal quotations omitted)). The statute's terms are clear and unambiguous. It is not the province of this Court to enlarge this statute beyond its declaration.

[¶ 30.] Affirmed.

[¶ 31.] GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, concur.

[¶ 32.] ZINTER, Justice, concurs with a writing.

ZINTER, Justice (concurring).

[¶ 33.] I concur and write only to point out one procedural aspect of this case. This is an appeal from a denial of a motion for summary judgment, and we usually do not hear such claims because our appellate jurisdiction is generally limited to a review of final judgments. *See* SDCL 15–26A–3. Consequently, we required these parties to demonstrate whether this appeal was properly before us. We ultimately entertained the appeal because the trial court certified its ruling as a final judgment under SDCL 15–6–54(b) and because both parties demonstrated that the denial of summary judgment was effectively a final judgment.