#24436-a-JKM
**2007 SD 116**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JEANNA SCHAFER, as Guardian Ad
Litem of T.F. and T.F.,                                            Plaintiff and Appellant,

  v.

SHOPKO STORES, INC., a foreign
Corporation, GARRY FREIER, and
AVRIEL HERTZ,                                                      Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
DAVISON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE EUGENE E. DOBBERPUHL
Judge

* * * *

PATRICK T. PARDY of
Mumford, Protsch and Pardy
Howard, South Dakota

GARY W. SCHUMACHER of
Wilkinson & Wilkinson                           Attorneys for plaintiff
DeSmet, South Dakota                            and appellant.

EDWIN E. EVANS
MITCHELL A. PETERSON of
Davenport, Evans, Hurwitz
 & Smith LLP                                   Attorneys for defendants
Sioux Falls, South Dakota                       and appellees.

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 1, 2007

OPINION FILED **11/07/07**

MEIERHENRY, Justice

[¶1.]        Jeanna Schafer, as Guardian Ad Litem of T.F. and T.F. (Schafer), filed an action against Shopko Stores, Inc. (Shopko) for damages under SDCL 34-20C, the Drug Dealer Liability Act (DDLA).  Shopko filled two valid prescriptions for morphine sulphate, a Schedule II controlled drug, for Tully Knigge (Knigge).  Knigge sent Shane Feistner (Feistner) to pick up his prescriptions.  Shopko gave the filled prescriptions to Feistner.  Feistner consumed some of the morphine pills and died of a drug overdose.  Schafer sued Shopko claiming that Shopko was liable under the provisions of the DDLA.  The circuit court granted summary judgment in favor of Shopko.  Schafer appeals.  We affirm.

## FACTS

[¶2.]        Knigge is a person with disabilities and chronic pain, who is often unable to travel to have his prescriptions filled.  On July 22, 2004, Knigge had Feistner fill two morphine sulphate prescriptions.  Knigge gave Feistner his prescriptions and a signed blank check payable to Shopko.  Knigge frequently had his prescriptions filled at Shopko by others.  Shopko filled the prescriptions according to the prescription order.

[¶3.]        Feistner, with Knigge's knowledge and consent, consumed some of Knigge's morphine before and after delivering the prescriptions to Knigge.  Feistner also consumed a potentially toxic amount of alprazolam (Xanax) either on July 22nd or in the early morning hours of July 23rd.  Feistner did not obtain the Xanax from Knigge.  Feistner died as a result of asphyxiation from aspirating the contents of his stomach on July 23rd.

[¶4.]     Schafer filed an action alleging that Shopko was liable for damages under SDCL 34-20C-2, the DDLA.  Schafer claimed that Shopko had "participat[ed] in the illegal drug market" by dispensing the controlled drug to one other than Knigge or a member of his household.  Schafer relied on the definition of "ultimate user" as used in SDCL 22-42-1 and 34-20B-1(21).  "Ultimate user" as used in the statutes is defined as "a person who lawfully possesses a controlled drug or substance for personal use or for the use of a member of that person's household . . . ."  Schafer argued that in dispensing the prescription to Feistner, Shopko did not dispense the drug to the "ultimate user," – Knigge or a member of his household – and was thus liable under the DDLA.  Shopko, on the other hand, pointed to SDCL 36-11-2 (7), which allows a pharmacist to dispense a prescription drug order "to a patient or a patient's agent[.]"  Shopko argued that since the pharmacist legally dispensed the drug to Feistner who was Knigge's agent, it could not be liable under the DDLA.  Schafer claims that the circuit court erred by granting summary judgment in favor of Shopko.

### STANDARD OF REVIEW

[¶5.]     Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  SDCL 15-6-56(c)(3).  "[S]ummary judgment will only be affirmed if there are no genuine issues of material fact and the legal questions have been decided correctly . . .  No deference is afforded the circuit court's conclusions of law."  King v. Landguth, 2007 SD 2, ¶8,

726 NW2d 603, 607 (citations omitted). "Questions of law such as statutory interpretation are reviewed by the Court de novo." Martinmaas v. Englemann, 2000 SD 85, ¶49, 612 NW2d 600, 611.

## ANALYSIS

[¶6.]     The issue before this Court is whether a pharmacy that dispenses a validly prescribed Schedule II drug to an authorized agent of a user can be held liable under the DDLA for the agent's consumption of the drug. Based on the language of the relevant statutes, we conclude that the Legislature did not intend for a pharmacist to be held liable under these circumstances.

[¶7.]     We have said that legislative "intent must be determined from the statute as a whole, as well as enactments relating to the same subject." Moss v. Guttormson, 1996 SD 76, ¶10, 551 NW2d 14, 17 (citing US West Communications, Inc. v. Public Util. Comm'n, 505 NW2d 115, 122-23 (SD 1993) (citations omitted)). "There are instances when it is necessary to look beyond the express language of a statute in determining legislative intent. Most notably . . . if confining ourselves to the express language would produce an absurd result." MGA Ins. Co., Inc. v. Goodsell, 2005 SD 118, ¶17, 707 NW2d 483, 487 (citations omitted). "We presume that the Legislature intended no absurd or unreasonable result." Moeller v. Weber, 2004 SD 110, ¶46, 689 NW2d 1, 16. "[W]here statutes appear to conflict, it is our responsibility to give reasonable construction to both, and if possible, to give effect to all provisions under consideration, construing them together to make them 'harmonious and workable.'" Wiersma v. Maple Leaf Farms, 1996 SD 16, ¶4, 543 NW2d 787, 789 (citations omitted). "Furthermore, '[w]e should not adopt an

interpretation of a statute that renders the statute meaningless when the Legislature obviously passed it for a reason." Zubke v. Melrose Tp, 2007 SD 43, ¶14, 731 NW2d 918, 922.

[¶8.] Under the DDLA, "[a]ny person who knowingly participates in the illegal drug market within this state is liable for civil damages . . ." SDCL 34-20C-2.[1] South Dakota adopted most of the provisions of the model DDLA, with only minor modifications.[2] The purpose of the DDLA is to relax causation requirements to prove negligence because the common law effectively barred family members of drug users from filing suit against illegal drug dealers.[3] *See, e.g.,* SC Code of Laws 44-54-20 (stating purpose of DDLA is to "establish a cause of action against drug dealers for damages") and 44-54-40(B)(2) (in order to recover damages a person

---

1. The DDLA provides a civil penalty for those harmed by illegal drug use under a market participant liability theory or a direct liability theory. SDCL 34-20C *et seq*. South Dakota adopted the Model Drug Dealer Liability Act promulgated by the American Legislative Exchange Council. Arkansas, California, Colorado, Florida, Georgia, Hawaii, Illinois, Indiana, Louisiana, Michigan, New Hampshire, Oklahoma, South Carolina and Utah have also adopted the model legislation. Ark Code Ann 16-124-101 – 112; Cal Health & Safety Code 11700 – 11717; Colo Rev Stat 13-21-601 to -614; Fla Stat Ann 772.12; OCGA 51-1-46; Haw Rev Stat Ann 663D; 740 Ill Comp Stat Ann N 57/1-25; Ind. Code Ann 34-1-70; LA Rev Stat Ann 9:2800.61 - .76; Mich Comp Laws Ann 691.1601 - .1619; NH Stat tit. XXX, ch. 318-C et seq.; Okla Stat Ann tit. 63, 2-421 to -435; SC Code of Laws 44-54-10 to -140; Utah Code Ann 58-37e-1 – 14.

2. Nicholas Reiter, *Note: Dollars for Victims of a "Victimless" Crime: A Defense of the Drug Dealer Liability Acts*, 15 J L & Pol'y 1329, 1338 n. 40-41 (2007) ("fifteen jurisdictions have enacted drug dealer liability statutes, each jurisdiction closely follows the provisions set forth in the Model [DDLA], which has been adopted by the American Legislative Exchange Council").

3. Joel W. Barr, *Let the Drug Dealer Beware: Market-Share Liability in Michigan for the Injuries Caused by the Illegal Drug Market*, 32 Val UL Rev 139 (1997).

need only prove "a person knowingly participated in the marketing of illegal controlled substances at any time" during which a person used the same type of illegal drugs in the same geographical area). There is no evidence that the Legislature adopted the DDLA for any purpose other than to impose civil liability on illegal drug dealers. South Dakota DDLA provides third parties, and in limited circumstances drug users, harmed by the use of illegal drugs a civil remedy against those who knowingly distribute illegal drugs. SDCL 34-20C-5.

[¶9.]       In this case, for liability to attach under the DDLA, Schafer would have to show that the Shopko pharmacist "participate[d] in the illegal drug market." SDCL 34-20C-5(1). Schafer relies on the definition of the term "participate in the illegal drug market," which includes distribution of an illegal drug. SDCL 34-20C-1(9). "Illegal drug" for purposes of the DDLA is defined as "a controlled drug or substance or marijuana whose distribution is a violation of state law." SDCL 34-20C-1(2). Schafer claims that the pharmacist violated state law by dispensing the controlled drug to Feistner rather than to Knigge or a member of Knigge's household. To support this interpretation, Schafer relies on criminal statutes which Schafer claims limit a pharmacist to dispensing controlled drugs only to the "ultimate user." SDCL 22-42-2.1. The criminal statute provides:

> No person other than a practitioner who is not a pharmacist, may dispense a controlled drug or substance included in Schedule II to an ultimate user without the written prescription of a practitioner who is not a pharmacist. No prescription for a Schedule II drug or substance shall be refilled. A violation of this statute is a Class 4 felony.

*Id.* "Ultimate user" is defined as "a person who lawfully possesses a controlled drug or substance for that person's own use or for the use of a member of that person's household . . ." SDCL 22-42-1(11); SDCL 34-20B-1(21).

[¶10.]    The fallacy of Schafer's argument is her reliance on SDCL 22-42-2.1, which she claims requires a pharmacist to dispense controlled drugs only to the ultimate user or a member of his household. The plain meaning of the statutory language does not support her interpretation. In fact, the statutory provision expressly does not apply to pharmacists under these circumstances. The statute allows a licensed practitioner of the medical profession, *who is not a pharmacist*, to dispense drugs without a prescription to the ultimate user.

[¶11.]    On the other hand, the law specifically allows pharmacists to dispense drugs with a prescription to a patient's agent. The statute defines "dispense" as follows:

> (7)    "Dispense" or "Dispensing," the preparation and delivery of a drug to a ***patient or a patient's agent*** pursuant to a prescription drug order in a suitable container with appropriate labeling for subsequent administration to or use by a patient. . . .

SDCL 36-11-2(7) *(emphasis added)*. The law prohibits a pharmacist from distributing Schedule I and II controlled drugs or substances without a prescription. SDCL 34-20B-46. The law makes it a felony "for any person who is a [registered pharmacist] knowingly to distribute a controlled drug or substance classified in Schedules I or II, in the course of his legitimate business, *except pursuant to an order form as required by this chapter*." SDCL 34-20B-46 (emphasis added). Additionally, pharmacists are prohibited from refilling Schedule II drug or

substance prescriptions.  SDCL 22-42-2.1.  However, no provision of the DDLA provides, as Schafer argues, that a pharmacist may only legally dispense a controlled drug to an "ultimate user" and not an agent.

[¶12.]      It is undisputed that Shopko had a valid prescription order form for the controlled drug that it filled and delivered to Knigge's agent, Feistner.  Clearly, Shopko met the requirements of the law.  To interpret and apply the law as Schafer urges would make Shopko liable for a legal act.  Such an interpretation is strained and would cause an absurd result.  Because we hold that Shopko's conduct did not fall within the purview of the DDLA, we do not reach Schafer's other issues.

[¶13.]      Affirmed.

[¶14.]      GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.